No. 10,481.

SIMPSON, ET AL. v. BABER.

Decided November 5, 1923.

Action on promissory note.  Judgment for plaintiff.

*Affirmed.*

1. BILLS AND NOTES—*Contract—Evidence.*  In an action on a promissory note, the contention of the maker that the note and a separate writing constituted the contract, overruled, and the evidence held to support the finding of the trial court, that they were separate contracts.

2. *Promissory Note—Time of Payment.*  The uncertainty of the time of payment of a note does not affect it as an enforceable contract between the parties thereto, although it may make it non-negotiable.

3. CONTRACT—*Reformation.*  Where it appears from the evidence that a contract does not express the real intention of the parties thereto, the court in the exercise of its judicial discretion may reform the instrument to make it express their agreement, and enforce it as reformed.

*Error to the District Court of Cheyenne County, Hon. Arthur Cornforth, Judge.*

Mr. A. E. BOWE, for plaintiffs in error.

Mr. THOMAS WARD, JR., Mr. VIGGO H. JOHNSON, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

ACTION by Baber, payee, against D. W. Simpson and Matilda Simpson, makers of a promissory note for $3200. The answer admits execution, delivery, maturity and non-payment.  In a separate defense it is alleged that the note was signed by the defendants by virtue, and in pursuance, of a written agreement between D. W. Simpson, one of

the defendants, and J. S. Baber, the plaintiff, in the following words:

"The said D. W. Simpson agrees to sell Section Seven, in Township Twelve, south of Range Forty-three, Cheyenne County, Colorado, for Twenty-two Dollars and Fifty Cents per acre net to J. S. Baber within One Hundred Twenty Days after the date of this agreement, and has this day given his note signed by D. W. Simpson and Matilda Simpson, his wife, as a guarantee the sale of this land per this agreement. It is agreed by the parties to this contract that in event this land is not sold within One Hundred Twenty Days after date that the note becomes due and payable."

To this answer plaintiff filed his replication in which he admits he signed the written agreement and alleges that before he did sign it the note described in the complaint, though given on the same day, was executed and delivered as a part of, and in connection with, a fully completed exchange of lands by and between the plaintiff Baber and one Lampshire, which was negotiated by the defendant, D. W. Simpson. This exchange was that plaintiff Baber conveyed to Lampshire section 26 in Kit Carson county, Colorado, which Baber then owned, and Lampshire conveyed to plaintiff section 7 in Cheyenne county. Both parties considered plaintiff's section 26 worth $3,200 more than Lampshire's section 7. The note sued on, the principal of which is the same in amount as this excess value, was part of the consideration to the plaintiff for the exchange—the makers of the note having received from Lampshire other properties and securities which they deemed, or at least accepted, as the equivalent in value of their note. On the trial to the court without a jury, the court made findings and rendered judgment in favor of the plaintiff.

Unless the two writings, the note, and the writing from which the foregoing quotation is taken, constitute one contract, the defendants do not assert plaintiff is precluded from recovery on the note. The evidence is legally suffi-

cient to sustain the finding of the trial court that the making of the note and the separate written instrument were entirely different contracts. D. W. Simpson at one time owned section 7. He sold it to Lampshire. Lampshire threatened to cancel the contract or rescind the sale on the ground of Simpson's fraud. To avoid the consequences of an anticipated suit, D. W. Simpson came to the plaintiff and requested his assistance "to get him out of a bad box," referring to the attitude of Lampshire.

Simpson and Lampshire evidently had an understanding that Lampshire would be satisfied if he could get plaintiff's section 26 in exchange for his section 7, which was misrepresented to him by Simpson. But plaintiff would not make the exchange on even terms. The parties are in accord that plaintiff's land exceeded in value Lampshire's lands by $3200. For this difference D. W. Simpson wanted the plaintiff to take a mortgage that he or Lampshire had on Nebraska property and certain other securities, which plaintiff declined to do. Mr. Simpson then proposed that he would give a promissory note signed by himself and wife for $3,200, in order to bring about this exchange. Plaintiff accepted the offered terms, the proper conveyances were made and the note delivered. By giving, as part consideration for the exchange, this $3,200 note, Simpson secured, through Lampshire, his release from a mortgage that was on section 7 when he sold it to Lampshire, avoided the threatened law suit, and got certain properties and securities from Lampshire which he deemed or accepted as the equivalent of, and as full compensation for, the liability which he incurred on the note. After the land exchange was fully consummated by the passing of deeds and delivery of the note, defendant D. W. Simpson requested of the plaintiff to list with him for sale section 7 that was obtained in the exchange. Simpson assured plaintiff that he knew he could, and would, be able to sell it for $3,200 more than the amount it was reckoned at in the exchange. It is this writing, concerning the listing and sale of the plaintiff's land that the defendants

plead as a bar to a recovery on the plaintiff's note. Their theory is not altogether clear, but it would seem to be that the note and separate writing constitute one entire contract of the parties which, properly interpreted, make this note a nonnegotiable instrument because its payment is uncertain and indefinite, and the contract thus created is a wagering contract, void as against public policy.

1. If the note was a part of, or given as part considera-· tion for, the land exchanged, and the exchange was completed and closed, and the note unconditionally delivered before the separate writing was made, the judgment on the note in favor of the plaintiff was right. The evidence, if it is admissible at all, strongly tends to support the court's finding that the note and the separate writing were entirely separate contracts. The exchange, of which the note was part consideration to plaintiff for making the same, was concluded and all the papers passed before the separate writing was even suggested, made or signed. The exchange of lands was between the plaintiff and Lampshire alone, defendant D. W. Simpson being merely a middleman or broker in bringing the parties together. He was not a party to that contract. He did become liable on the note because he substituted his own obligation as part of Lampshire's consideration for the exchange for which he received an equivalent from Lampshire. The separate agreement made on the same date was between other parties. It was a contract between plaintiff and defendant D. W. Simpson. Neither Mrs. Simpson, a joint maker of the note, nor Lampshire, one of the parties to the land exchange, was a party to the later listing agreement. In a suit upon either instrument, only one a party thereto could invoke some right arising out of the other to which his adversary was also a party. If, however, the separate writing is a contract independent of, and not connected with, the note, it could not be used by the defendants to defeat a recovery on the note.

2. But if the two instruments were between the same parties and together constituted one contract, the defense

interposed is not good. If the two together constitute the contract of the parties, the meaning is simply this: The defendants promised to pay $3,200 in money to the plaintiff within 120 days after date, but if, within that period of time, one of the makers of the note succeeded in selling plaintiff's section 26 for $3,200 more than the sum which the plaintiff considered its value when he got it, this excess coming to plaintiff should be deemed and accepted as full payment of the note and the note thereupon should be delivered to the makers. The uncertainty or indefiniteness of the time of payment of the note, if any, might render the instrument nonnegotiable, which would be important only as between the makers and subsequent *bona fide* holders, but that circumstance does not affect it as an enforceable contract, by one of the parties thereto as against the other.

3. The point that the court permitted the defendants, by their evidence, to contradict or vary the terms of a written instrument, is not tenable. If the two writings are to be considered together, and if the separate agreement had been fully performed, the note would thereby be paid. With that plaintiff would be satisfied. If the sale is not made, the note is not affected. In other words, by this agreement defendants were given the opportunity or option to make a profit for the plaintiff by selling his land for $3,200 more than he paid for it, and this profit, if made, they were permitted to apply in discharge of their obligation on the note. If the sale was not made within the time, and no profit was thereby realized, their note is still their obligation and they must pay it out of their own funds.

4. For another reason the judgment is right. If the separate agreement is plain and unambiguous in its meaning and, as properly interpreted, could, upon any theory, be held as a bar to an action on the note, and if the evidence admitted by the court was improper as contradicting or varying the plain terms of a written instrument, then the evidence which the court admitted, and properly so, for such purpose, clearly shows that the separate writing, if

so interpreted, does not express the real contract of the parties or the contract which the parties intended to make. While there is no specific prayer for a reformation of the instrument to make it conform to the actual intent of the parties in making their contract, the court, in the exercise of its judicial discretion might well reform the instrument to make it express their real agreement and enforce it as thus reformed. This, in effect, is what the court did—if, in fact, there is any conflict between the writing as signed and the contract which the parties intended to make; for the evidence is that the parties did not intend to make such a contract as the defendants say this separate writing is, but did intend to make a contract merely giving to the defendants an option to pay the note out of a profit on the sale, provided they succeeded in selling the plaintiff's lands within a certain time at that profit.

The judgment is right and it should be affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.