Sebe BROWN, Plaintiff–Appellant,

v.

AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, Individually and as
a Member of the American Family In-
surance Group, Defendant–Appellee.

No. 89CA0983.

Colorado Court of Appeals,
Div. V.

Oct. 11, 1990.

Rehearing Denied Nov. 23, 1990.

Certiorari Denied May 6, 1991.

Miller & McCarren, P.C., J. Kent Miller,
Denver, for plaintiff-appellant.

Dickinson, Everstine, Kelly &
Prud'Homme, Michelle Prud'Homme, Den-
ver, for defendant-appellee.

Opinion by Judge CRISWELL.

Plaintiff, Sebe Brown, appeals the sum-
mary judgment entered against him on his
claim for unpaid benefits in favor of his
insurer, defendant American Family Mutu-
al Insurance Co. He asserts that a policy
of insurance issued to him by defendant,
pursuant to the Colorado Auto Accident
Reparations Act, § 10–4–701, et seq.,
C.R.S. (1987 Repl.Vol. 4A) (the Act), im-
properly limits the amount of benefits to
which he is entitled under that act. We
agree and reverse the trial court's judg-
ment that was based upon a contrary con-
clusion.

Plaintiff sustained severe injuries in an
automobile accident that occurred in 1986.
At that time, he was insured under a policy
issued by the defendant which purported to
provide the minimum personal injury pro-
tection (PIP) benefits required under the
Act. This policy limited the recovery of

PIP benefits to a total aggregate sum of $100,000.

Section 10–4–706, C.R.S. (1987 Repl.Vol. 4A) sets forth the nature of the benefits and the minimum limits of coverage that any insurance policy must provide in order to comply with the Act. Prior to its amendment in 1984, this statute required a complying policy to provide benefits in the total aggregate amount of $61,960. The minimum limit for each type of PIP coverage was as follows:

| | |
|---|---:|
| Medical and related services | $25,000 |
| Wage Loss | 6,500 |
| Essential services (as defined by the Act) | 5,460 |
| Rehabilitation | 25,000 |
| Total | $61,960 |

See Colo.Sess.Laws 1973, ch. 94 at 335 (amending existing statutes by the addition of a new article).

Section 10–4–710, C.R.S. (1987 Repl.Vol. 4A) authorized the issuance of policies with higher limits in any category of benefits, and that statute specifically required every insurer to offer coverage for all medical benefits without any limitation and for increased limits for wage losses up to 85% of the actual losses.

However, § 10–4–710 also authorized a complying policy to place an overall limit upon the total aggregate amount payable under the policy of $100,000. At that time, therefore, the total aggregate limit authorized to be placed upon all benefits payable was some $38,040 more than the total minimum limits required by § 10–4–706 (i.e., $100,000 total aggregate limit less $61,960 in total minimum benefits).

In 1984, the General Assembly amended § 10–4–706 to increase the various minimum limits for each category of benefits required to be provided by a complying policy. Colo.Sess.Laws 1984, ch. 303 at 1071. As of the effective date of that amendment, the required limits are as follows:

| | |
|---|---:|
| Medical and related services | $ 50,000 |
| Wage Loss | 20,800 |
| Essential services | 9,100 |
| Rehabilitation | 50,000 |
| Total | $129,900 |

When this amendment was adopted, however, no amendment was made to § 10–4–710. Thus, that statute continued to contain a provision which, on its face, authorized an insurer to place a total aggregate limit of $100,000 upon all benefits payable under the policy. But, in light of the increased minimum limits that § 10–4–706 now provided, this total aggregate limit was $29,900 less than the total minimum limits required under § 10–4–706.

Section 10–4–710 was amended in 1989 to increase the total aggregate limit that may be contained within a complying PIP policy to $200,0000. Colo.Sess.Laws 1989, ch. 82 at 460.

Plaintiff argues that, in the years between these two amendments, during which period he was injured, there was an irreconcilable conflict between § 10–4–706 and § 10–4–710. As a result, he argues that the 1984 amendment must be construed to have amended, pro tanto, § 10–4–710 so as to authorize a total aggregate limit upon all benefits payable of $129,900, rather than $100,000. We agree.

■ When a plain reading of a statute does not reveal the General Assembly's intent, the statute may be interpreted by considering the object sought to be served, the circumstances sought to be attained, the legislative history, the common law or former statutory provisions including laws upon the same or similar subjects, the consequences of a particular construction, and the legislative declaration of purpose. Colorado Civil Rights Commission v. North Washington Fire Protection District, 772 P.2d 70 (Colo.1989). See also § 2–4–203, C.R.S. (1980 Repl.Vol. 1B).

■ A potentially conflicting statute should be interpreted, if possible, to harmonize with, and give meaning to, other potentially conflicting statutes. People v. T.O., 696 P.2d 811 (Colo.1985). However, when the statutes cannot be harmonized, the statute enacted last in time controls. Section 2–4–206, C.R.S. (1980 Repl.Vol. 1B); § 2–4–301, C.R.S. (1980 Repl.Vol. 1B) (respecting amendments enacted last in time);

*Ortega v. Industrial Commission,* 682 P.2d 511 (Colo.App.1984).

Here, we consider it significant that the provision allowing a carrier to place an aggregate limit upon all benefits does not appear in the statute, § 10–4–706, which establishes the required minimum benefits. It is contained, rather, in the statute, § 10–4–710, that authorizes an insured to purchase enlarged coverages. Before the required minimum coverages were increased, therefore, it appears that the aggregate limit was originally intended to place a limit only upon the additional coverages selected; if the insured did not elect to pay for additional coverage, the aggregate limit would never have been reached. Once the required minima were increased beyond the authorized aggregate limit, however, this original purpose was defeated, albeit perhaps unintentionally.

Further, prior to the adoption of the amendment to § 10–4–706, the supreme court had made clear that, if a statute requires coverage in a minimum amount, an insurance carrier cannot decrease that minimum by offsetting or crediting payments made for other benefits, absent a clear legislative authorization for such reduction. *Newton v. Nationwide Mutual Fire Insurance Co.,* 197 Colo. 462, 594 P.2d 1042 (1979). And, we must presume that the General Assembly was aware of this principle at the time it amended § 10–4–706 in 1984. *Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987).

■ Thus, in the absence of a clear legislative declaration that the original aggregate limit in § 10–4–710 was intended to authorize a decrease in the various minima set forth in § 10–4–706, as amended, we cannot conclude that the former provision was intended to affect the amounts payable under the latter.

Finally, that these two statutory provisions were inconsistent was recognized by the lawmakers when they amended § 10–4–710 in 1989. *See* Hearing on S.B. 128 before Senate Business Committee, 57th General Assembly, 1st Session, February 1, 1989; and Hearing on S.B. 128 be-fore House Business Committee, 57th General Assembly, 1st Session, March 9, 1989.

■ Defendant attempts to harmonize this inconsistency by arguing that the aggregate limit was intended to operate in a fashion similar to the limit imposed in § 10–4–706, C.R.S. (1987 Repl.Vol. 4A) for liability coverage. However, we consider that limit, which allows for coverage of $25,000 to any one person in any one accident and $50,000 to all persons in any one accident, to be conceptually different.

Rather than functioning as an aggregate limit, the liability limit applies to one specific coverage in varying degrees. Its purpose is to place a maximum ceiling on the minimum liability coverage for one accident irrespective of the number of claimants involved. Without such a limit, the minimum liability coverage required would be dependent on the number of claimants, and thus, would hold the potential of being unlimited. Because the possibility for unlimited coverage does not exist in regard to the required minima for PIP coverages, any comparison between the two limits is of no aid in resolving the existing inconsistency.

Having concluded that the 1984 amendment to § 10–4–706 cannot be reconciled with the aggregate limit contained in § 10–4–710(2)(b) prior to its 1989 amendment, we must follow the command of §§ 2–4–206 and 2–4–301. We hold, therefore, that the total of the minima contained in the 1984 amendment of $129,900 controls the amount of coverage that must be provided in a complying policy under the Act. Consequently, the limit of $100,000 in § 10–4–710(2)(b), as it applied at the time of plaintiff's accident, must be considered to have been amended, *pro tanto,* so as not to limit the amount of any required benefit under § 10–4–706. This result is consistent with the intent underlying the Act, which is to maximize, rather than to minimize, insurance coverage. *Leland v. Travelers Indemnity Co.,* 712 P.2d 1060 (Colo.App. 1985).

The judgment of the trial court is reversed, and the cause is remanded to it for

further proceedings consistent with the views contained in this opinion.

DAVIDSON and DUBOFSKY, JJ., concur.