Richard BRENNAN, individually and on behalf of Joshua Brennan, a minor; Brenda Brennan, individually and on behalf of Joshua Brennan, a minor; and Joshua Brennan, a minor, Plaintiffs–Appellants and Cross–Appellees,

v.

FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, Defendant–Appellee and Cross–Appellant.

No. 96CA1807.

Colorado Court of Appeals, Div. II.

Jan. 8, 1998.

Rehearing Denied Feb. 5, 1998.

Certiorari Denied Aug. 24, 1998.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.1997.

Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., C. Michael Montgomery, Peter S. Dusbabek, Fort Collins, for Plaintiffs–Appellants and Cross–Appellees.

Anstine, Hill, Richards & Simpson, Ronald C. Hill, Michael S. Simpson, Denver, for Defendant–Appellee and Cross–Appellant.

Kennedy & Christopher, P.C., John R. Mann, Denver, for Amicus Curiae Alliance of American Insurers.

Opinion by Judge DAVIDSON.

This action arose from an auto-pedestrian accident involving plaintiff, Joshua Brennan. Seeking additional personal injury protection (PIP) benefits under the Colorado Auto Accident Reparations Act, § 10–4–701 et seq., C.R.S.1997 (the No–Fault Act), Joshua's parents, plaintiffs Richard and Brenda Brennan, individually and on behalf of their son, filed suit against defendant, Farmers Alliance Mutual Insurance Company (Farmers). On cross-motions for summary judgment, the trial court dismissed several claims and entered judgment on the remaining claims in favor of plaintiffs. Farmers appeals and plaintiffs cross-appeal from these rulings. We affirm in part, vacate in part, and remand.

In October 1991, Joshua Brennan was severely injured when he was struck by a motor vehicle while crossing the street. The vehicle was insured under a policy issued by Farmers to the driver's parents, who are not parties to this appeal. In compliance with the mandatory coverage requirements of the No–Fault Act, the policy provided for coverage of $100,000 for Personal Injury Protection (PIP) benefits which were timely paid to the Brennans.

Section 10–4–710, C.R.S.1997, also provides to an insured the option of purchasing additional PIP coverage, and the policy here included an endorsement which provided for these extended benefits. In July 1995, claiming that these additional benefits (1) applied to Joshua Brennan and (2) provided unlimited coverage, plaintiffs filed suit against Farmers, alleging breach of contract, bad faith breach of contract, fraud, treble damages, and attorney fees. In response, Farmers asserted that the extended PIP provision of the policy did not include pedestrians and, since Joshua Brennan was injured as a pedestrian, it had no obligation to provide any additional payment to the Brennans.

On cross-motions for summary judgment, the trial court agreed with Farmers that the extended PIP provision of the insurance policy did not actually cover pedestrians. However, because, in its view, such coverage was required under § 10–4–710, the court reformed the policy to provide such benefits. The court rejected plaintiffs' argument that the additional PIP coverage was unlimited in amount and entered judgment for $90,900, the difference between the $200,000 maximum aggregate amount provided by the policy, and the $109,100 already paid to the Brennans. The court also dismissed plaintiffs' remaining claims, awarded interest from the date of plaintiffs' complaint, and denied their request for attorney fees. This appeal and cross-appeal followed.

The pivotal question presented here is whether the No–Fault Act requires that extended PIP benefits purchased pursuant to § 10–4–710 be payable to a pedestrian. We conclude that the terms of the No–Fault Act require that the insurer offer such coverage. Hence, because such coverage was not offered nor included in the policy here, the trial court properly reformed the policy to include such coverage. Also, although we disagree somewhat with the trial court's determination of interest and costs, we agree with its resolution of plaintiffs' remaining claims.

I.

A.

The No–Fault Act requires that a complying policy include mandatory PIP benefits. Specifically, § 10–4–706(1), C.R.S.1997, as relevant here, requires a carrier to provide:

(b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary ex-

penses for medical ... and nonmedical remedial care and treatment ... performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle. . . .

(c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.

Section 10–4–706, C.R.S.1997, does not indicate to whom these coverages apply. That information is set forth, however, in § 10–4–707(1), C.R.S.1997, in which the coverages described in § 10–4–706 are applied to four groups of people: 1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle. *See Hall v. Trinity Universal Insurance Co.*, 660 P.2d 1298 (Colo.App.1982), *aff'd*, 690 P.2d 227 (Colo.1984).

In addition to the mandatory minimum PIP coverages required by §§ 10–4–706 and 10–4–707, C.R.S.1997, the No–Fault Act also provides for supplemental PIP coverage. Purchase of this coverage is at the option of the named insured. Specifically, § 10–4–710(2)(a), C.R.S.1997, provides:

Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in section 10–4–706, at the option of the named insured: (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation; or (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the date after the date of the accident without dollar or time limitations.

■ Farmers argues that § 10–4–710(2)(a) does not require extended PIP coverage to be provided to pedestrians. Emphasizing that, unlike the coverages mandated by § 10–4–706, the purchase of extended PIP coverage is entirely optional with the named insured, Farmers points out that § 10–4–710, C.R.S.1997, does not specify to whom these coverages are applicable. It is only in § 10–4–707(1) that the No–Fault Act lists the persons eligible to receive coverage, and § 10–4–707(1) refers only to coverages described in § 10–4–706. Therefore, according to Farmers, only the minimum PIP coverages required by § 10–4–706(1) must be extended to pedestrians. We disagree.

■ The purpose of the No–Fault Act is to avoid inadequate compensation to all victims of automobile accidents. *Coffman v. State Farm Mutual Automobile Insurance Co.*, 884 P.2d 275 (Colo.1994); *see* § 10–4–702, C.R.S.1997 (purpose of No–Fault Act is to provide adequate benefits to "victims of automobile accidents" and "to persons injured in accidents"); § 10–4–706 (provides coverage for "bodily injury or death" arising out of the use of a motor vehicle). The No–Fault Act is to be liberally construed to further its remedial and beneficent purposes. *See Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (Colo.1976).

Although Farmers correctly notes that § 10–4–710(2)(a) does not list nor refer to persons who are eligible for coverage, when this section is read in context, it is apparent that the extended coverages offered there must apply to the categories of persons listed in § 10–4–707(1). Specifically, in § 10–4–710, extended coverage is to be made available "in addition to the coverage described in § 10–4–706." The "types" of extended coverage to be provided are the "types" described in § 10–4–706(1)(b). And, the coverages provided in § 10–4–706(1)(b) apply without distinction to all categories of persons listed in § 10–4–707(1). Thus, by the plain terms of these provisions, § 10–4–710 describes an option to purchase coverage, but at higher limits, for the same persons and under the same conditions applicable to mandatory basic PIP coverage.

Moreover, where applicable, the coverage provisions of § 10–4–710 refer not to an "insured," a term which is specifically defined in § 10–4–703, C.R.S.1997, and which excludes pedestrians, but to "an injured person." And, although the term "insured" is defined in the No–Fault Act, the term "injured person" is not.

When the General Assembly defines a term in a statute, such term must be given its statutory meaning. *See R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo.1992). Conversely, we find significant the General Assembly's choice, in § 10–4–710, of the more general, non-defined term, "injured person," in lieu of the specific, defined term, "insured." *Compare* § 10–4–710 (extending coverage to an "injured person") *and* § 10–4–702 (purpose of No–Fault Act is to protect "persons injured") *with* § 10–4–706(2)(b), C.R.S.1997 (limiting PIP managed care option to the "named insured, resident spouse, resident relative, and permissive driver"). *See also* § 10–4–706(1)(b)(I) ("benefits shall be available to the insured or injured person").

Consequently, we read the term "injured person" as used in § 10–4–710(2) to encompass any injured person otherwise covered as set forth in § 10–4–707(1).

### B.

Nevertheless, Farmers argues, the legislative purpose of § 10–4–710 is to provide policyholders with a wider range of choices. And, it asserts, most insureds do not want to pay additional premiums for coverage for non-family members. Even if this latter assumption is accurate, however, it is of little consequence here.

Unlike § 10–4–706, § 10–4–710 provides no mandate to the motor vehicle owner or operator; the purchase of the coverages by the insured, and therefore, the extent of the coverages, are completely optional. Conversely, the directive of § 10–4–710 is to the insurer, not to the insured: all that is required is that the insurer *offer* these extended benefits.

■ Thus, although an insurer must offer extended coverages listed in § 10–4–710 which apply to all categories of persons specified in § 10–4–707, nothing in the No–Fault Act prohibits the named insured from limiting its purchase of additional coverage by scope, application, or amount. *Cf. Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo.1995) (requiring insurer to offer uninsured/underinsured motorist benefits to same class of individuals covered under liability provision of policy); *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905 (Colo.1992) (requiring insurer to offer uninsured/underinsured motorist coverage).

■ Here, however, it is undisputed that Farmers did not offer extended coverage which included pedestrians. And when, as here, an insurer fails to offer the insured optional coverage that satisfies the No–Fault Act, additional coverage in conformity with the offer mandated by statute will be incorporated into the policy. *See Thompson v. Budget Rent–A–Car Systems, Inc.,* 940 P.2d 987 (Colo.App.1996); *see also 2 Couch on Insurance* § 26:1 (L. Russ & T. Segalla 3d ed. 1995). Thus, the trial court's judicial reformation of the policy to reflect coverage of Joshua Brennan was correct.

### II.

On cross-appeal, plaintiffs take issue with the trial court's reformation of the policy, not on the grounds that its interpretation of the No–Fault Act was in error, but on the grounds that reformation was unnecessary because the policy itself provided coverage to pedestrians. Moreover, plaintiffs assert, the coverage was not capped at $200,000 as the trial court determined, but was unlimited. We disagree with both contentions.

### A.

As pertinent here, in addition to the endorsement providing for extended PIP benefits, the policy included the following document:

### POLICYHOLDER NOTICE

### ADDED PERSONAL INJURY PROTECTION

Your automobile policy has been renewed with the same Personal Injury Protection

(PIP) work loss benefit amounts as last year. However, a recent language interpretation of the Colorado Revised Statute Section 10–4–710(2)(a) provides that Added Personal Injury Protection (PIP) benefits shall be offered "at the option of the insured." You therefore have the option to choose any or all of the three Added Personal Injury Protection benefits as desired:

. . . .

If you desire to change your Personal Injury Protection benefit coverage or you need more information, please contact your agent.

The document listed, as an optional added PIP benefit, supplemental "medical expense benefits without dollar or time limitation." Also, unlike the extended PIP benefits endorsement, the document did not restrict the additional benefits to "you or any family member."

■ However, although an endorsement attached to a policy becomes part of the policy, *Martinez v. Hawkeye–Security Insurance Co.*, 195 Colo. 184, 576 P.2d 1017 (1978), contrary to plaintiffs' contention, this document simply is not an endorsement. Unlike the other attachments to the policy which are referred to as "endorsements," it plainly is entitled "policyholder notice." Furthermore, its specific language does not alter the policy. To the contrary, it requires the insured to contact a Farmers agent in order to change coverage.

## B.

The policy endorsement providing supplemental PIP coverage here caps at $200,000 the aggregate amount payable. Plaintiffs argue that, under this endorsement, the maximum aggregate limit of $200,000 applies only to medical benefits. We disagree.

■ Initially, we note that, although § 10–4–710(2)(a) provides that insurers must offer additional benefits "without dollar or time limitations," § 10–4–710(2)(b), C.R.S.1997, provides that all benefits, including those set forth in § 10–4–710(2)(a), may be subject to an aggregate limit:

*A complying policy may provide that all benefits set forth* in section 10–4–706(1)(b) to (1)(e) and *in this section are subject to an aggregate limit of two hundred thousand dollars* payable on account of injury to or death of any one person as a result of any one accident arising out of the use or operation of a motor vehicle. (emphasis added)

Thus, by its terms, § 10–4–710(2)(b) authorizes a complying policy to place an overall limit of $200,000 upon the total aggregate amount payable. *See Colby v. Progressive Casualty Insurance Co.*, 928 P.2d 1298 (Colo. 1996) (citing legislative history, court concluded that § 10–4–710(2)(b) permits an insurer to cap the total amount of benefits at $200,000); *Thompson v. Budget Rent–A–Car Systems, Inc., supra* (indicating that insurer could have included a provision for a $200,000 cap for all benefits under § 10–4–710(2)(b)); *Brown v. American Family Mutual Insurance Co.*, 809 P.2d 1055 (Colo.App.1990) (concluding that $200,000 is total aggregate limit that may be contained in a complying PIP policy).

■ Here, the endorsement defines maximum aggregate limit as the amount "payable for medical expenses, rehabilitation expenses, work loss, essential services and death compensation." Thus, by the plain terms of the policy, the $200,000 limit applies to all types of PIP benefits.

## III.

Plaintiffs next contend that the trial court improperly dismissed their claims for breach of contract, bad faith breach of contract, and fraudulent misrepresentation. Plaintiffs also assert that the denial of their claims for treble damages and attorney fees under § 10–4–708, C.R.S.1997, of the No–Fault Act, was error. Similarly, plaintiffs contend, the trial court's calculation of interest under that statute was incorrect. Except for the determination of interest and costs, we disagree.

## A.

The rationale for the court's dismissal of plaintiffs' claims for breach of contract, bad faith breach of contract, and fraud, as well as

their statutory claims, was, in essence, that the statute was unclear, the reliance by Farmers on its policy provisions was reasonable, and, until the policy was judicially reformed to conform to the trial court's interpretation of the statute, Farmers had no obligation to pay additional benefits to plaintiffs.

■■■ The remedy of reformation is an equitable one, *see Jackson Enterprises, Inc. v. Maguire*, 144 Colo. 164, 355 P.2d 540 (1960), and the trial court's formulation of such remedy is within its discretion. *See Simpson v. Baber*, 74 Colo. 175, 220 P. 235 (1923). When an insurance policy is reformed to conform to a statutory minimum, such term is deemed to be incorporated by reference into the policy, *see* 17 G. Couch, *Cyclopedia of Insurance Law* § 66:3 (M. Rhodes 2d ed. rev.1984). However, in fashioning its equitable remedy, the trial court ascertained that Farmers should not necessarily have anticipated that it would be obligated to pay such benefits and ruled, therefore, that Farmers' contractual obligation to pay additional PIP benefits to Joshua Brennan did not arise until the insurance policy was judicially reformed.

We have no reason to quarrel with this exercise of discretion.

Here, the extended PIP benefits portion of the policy did not include pedestrians and it was undisputed that Farmers had used, for this portion of the policy, a standard industry form endorsement. Furthermore, the No-Fault Act was unclear on this issue and no appellate court had yet determined whether § 10–4–710, enacted originally in 1973, applied to pedestrians. Certainly, under such circumstances, it is not inappropriate to apply such interpretation prospectively. *See, e.g., Ground Water Commission v. Shanks*, 658 P.2d 847 (Colo.1983) (setting forth test for prospective application of decisions interpreting statutes). In addition, there is authority for the proposition that, in insurance law, until an insurance contract is reformed, the insurer has no obligation to conform to such "reformed" policy. *See 2 Couch on Insurance* § 26:3 (L. Russ & T. Segalla 3d ed.1995).

Accordingly, the trial court correctly determined that, prior to its judicial reformation, Farmers did not breach the insurance contract by failing to pay the additional PIP benefits.

Here, by the plain terms of the policy, pedestrians were not covered under the additional PIP coverage, which applied only to the insured and the insured's family. Thus, until the contract was reformed, there was no policy in existence which granted plaintiffs rights for additional PIP benefits. *See Spencer Investments, Inc. v. Bohn*, 923 P.2d 140 (Colo.App.1995) (to prevail on a claim for breach of contract, plaintiff must show that there was a contract in existence and that defendant failed to perform some term of the contract).

Nor could there be a bad faith breach of contract.

■■■ In every insurance contract there is an implied covenant of good faith and fair dealing. Accordingly, when the insurer unreasonably and in bad faith withholds payment of claims of its insured, it is subject to liability in tort. *Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984).

For purposes of measuring the conduct of the insurer when, as here, first party bad faith is alleged, the court considers whether the conduct was unreasonable and whether the insurer had knowledge or acted in reckless disregard of the fact that the conduct was unreasonable. *Brandon v. Sterling Colorado Beef Co.*, 827 P.2d 559 (Colo.App.1991).

Plaintiffs contend that the insurer's actions constituted a bad faith breach of contract on two occasions: when the adjuster investigated the claim, and when Farmers did not pay the court's judgment.

■■■ However, under the circumstances here, the insurance adjuster's actions were irrelevant. Since the additional PIP benefits were not due until the contract was reformed, the insurer did not withhold payment on any claims that were due. In addition, as discussed, Farmers, in drafting the policy, reasonably relied on an endorsement form on file with the Colorado Insurance Commissioner pursuant to § 10–4–725, C.R.S.1997.

Furthermore, resort to a judicial forum is not necessarily bad faith or unfair dealing on the part of an insurer regardless of the outcome of the suit. Rather, an insurer may challenge claims which are fairly debatable. If, as here, an insurer maintains a mistaken belief that the claim is not compensable, it may be within the scope of permissible challenge even if its belief is incorrect. *See Brandon v. Sterling Colorado Beef Co.,* supra.

■ Nor did plaintiffs establish a prima facie case of fraudulent misrepresentation. To establish a prima facie case, a plaintiff must present evidence, *inter alia,* that defendant made a false representation of material fact and that the party making the representation knew it was false. *Brody v. Bock,* 897 P.2d 769 (Colo.1995). Here, however, Farmers' alleged statements to plaintiffs at the time of settlement negotiations that it had fulfilled its obligation under the policy were not incorrect. It did not owe any further benefits to plaintiffs until the contract was reformed.

### B.

For similar reasons, we disagree with plaintiffs that the trial court improperly dismissed their claims for treble damages under § 10–4–708.

■ Treble damages are awarded to an insured in the event of a willful and wanton failure of an insurer to pay PIP benefits when due. *See* § 10–4–708(1.8), C.R.S.1997. Willful and wanton failure to pay benefits when due is established when an insurer acts without justification and in disregard of plaintiffs' rights. *Dale v. Guaranty National Insurance Co.,* 948 P.2d 545 (Colo.1997).

■ Here, as discussed, Farmers was not obligated to pay the additional PIP benefits until the policy was reformed, and Farmers paid the benefits which were due under the policy in a timely manner. Under these circumstances, Farmers' reliance on the language of the policy, and its concomitant failure to anticipate the ruling of the trial court was not as a matter of law a willful or wanton action taken in disregard of plaintiffs' rights.

### C.

■ However, pursuant to § 10–4–708(1.8), an insurer is required to pay interest to the insured on the benefits recovered commencing from the date the benefits were due. Because, here, defendant had no obligation to pay the additional PIP benefits under the original policy, the first date the benefits could have been due is the date the contract was reformed. Thus, the trial court erred in awarding interest under § 10–4–708(1.8) from the date plaintiffs filed their complaint, and on remand, the award should be recalculated.

### D.

■ However, we find no abuse of discretion in the trial court's denial of plaintiffs' request for attorney fees under the PIP statute. Under § 10–4–708(1.7)(c), a trial court may deny attorney fees even to a successful plaintiff. *Adams v. Farmers Insurance Group,* 958 P.2d 502 (Colo.App. No. 96CA1252, November 13, 1997); *see also Bunting v. Regional Transportation District,* 919 P.2d 924 (Colo.App.1996); *cf. Leland v. Travelers Indemnity Co.,* 712 P.2d 1060 (Colo.App.1985) (under predecessor statute, award of attorney fees to insured who proved insurer failed to pay PIP benefits when due was mandatory).

The trial court did not rule on plaintiffs' request for costs under § 13–16–104, C.R.S. 1997, and this issue should be addressed on remand.

The portion of the judgment awarding interest is vacated, and the cause is remanded to the trial court for recalculation of interest under § 10–4–708(1.8) and for determination of costs. In all other respects, the judgment is affirmed.

METZGER and CRISWELL, JJ., concur.