Spencer **JEWETT**, Plaintiff–Appellant,

v.

**AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, a Wisconsin corporation; and United Services Automobile Association, a Texas reciprocal interinsurance exchange, Defendants–Appellees.**

No. 06CA1523.

Colorado Court of Appeals, Div. I.

Oct. 18, 2007.

The Carey Law Firm, Robert B. Carey, Leif Garrison, Colorado Springs, CO, for Plaintiff–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., Robert W. Harris, A. Peter Gregory, Englewood, CO, for Defendant–Appellee American Standard Insurance Company of Wisconsin.

Kennedy Childs & Fogg, P.C., John R. Mann, Daniel R. McCune, Denver, CO, for Defendant–Appellee United Services Automobile Association.

Opinion by Judge DAILEY.

In this dispute over insurance coverage, plaintiff, Spencer Jewett, appeals from the summary judgment entered in favor of defendants, American Standard Insurance Company of Wisconsin (American Standard) and United Services Automobile Association (USAA). We affirm in part, vacate in part, and remand.

### I. Background

The issues before us arise under the former Colorado Auto Accident Reparations Act (No–Fault Act), Ch. 94, sec. 1, §§ 13–25–1 to –23, 1973 Colo. Sess. Laws 334–45 (formerly codified as amended at §§ 10–4–701 to –726; repealed effective July 1, 2003, Ch. 189, sec. 1, § 10–4–726, 2002 Colo. Sess. Laws 649).

On April 30, 2002, Jewett, a pedestrian, was struck by a motor vehicle and suffered several debilitating upper-body injuries. At that time, the driver of the vehicle was covered by an automobile insurance policy issued by American Standard, while Jewett was the named insured under an automobile policy which he had initially purchased over the telephone from USAA.

American Standard paid Jewett the basic Personal Injury Protection (PIP) benefits required by law. Once those benefits were exhausted, however, Jewett requested—and

was denied—additional benefits from American Standard and USAA.

Jewett thereafter filed suit against both insurers, seeking reformation of the insurance contracts and declaratory relief as to the parties' rights and liabilities under those contracts. He also sought monetary relief based on claims of breach of the reformed insurance contracts and bad faith (statutory and common law).

Jewett's claims focused on defendants' alleged failure to offer Additional Personal Injury Protection (APIP) as required by the No–Fault Act. More specifically, Jewett alleged in his complaint that both insurers failed (1) to explain the availability of APIP in writing prior to issuing their policies, in violation of section 10–4–706(4)(a); (2) to offer, at the time the policies were sold, APIP benefits for pedestrians injured by, or non-family occupants of, the covered vehicle, as required by section 10–4–710; and (3) to offer APIP coverage in a manner reasonably calculated to permit the named insured to make an informed decision about whether to purchase APIP coverage.

USAA thereafter filed a "partial" answer, in which it asserted various defenses, and moved for summary judgment. In its summary judgment motion, USAA essentially took the position that, even if there existed a question about the timing or adequacy of its initial explanation or offer of APIP benefits, it had subsequently and adequately provided Jewett with the opportunity to purchase APIP benefits on twelve separate occasions before his accident. USAA provided 200 pages of exhibits in support of its position.

Jewett responded to USAA's summary judgment motion, both on the merits and with a request, if necessary, to be permitted to conduct discovery to develop one or more genuine issues of material fact.

The trial court granted USAA's motion for summary judgment and dismissed Jewett's case against *both* USAA and American Standard with prejudice.

## II. American Standard

■ On appeal, Jewett contends that the trial court erred in dismissing his claims against American Standard because (1) American Standard did not move for summary judgment and (2) the court provided no conclusions of law relating to the propriety of summary judgment in favor of American Standard.

American Standard acknowledges, and we agree, that the trial court erred in entering summary judgment in its favor. Consequently, we vacate that part of the trial court's order dismissing Jewett's case against American Standard and remand the matter to the trial court for further proceedings.

## III. USAA

On appeal, Jewett contends that the trial court erred in granting USAA's motion for summary judgment. More specifically, he asserts that (1) genuine issues of material fact existed, precluding summary judgment, or, alternatively, (2) under C.R.C.P. 56(f), the trial court should have granted him a reasonable continuance to discover evidence which would have created one or more material issues of fact for the trier of fact to resolve. We are not persuaded.

Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions in the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *see also Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo.App.2005).

■ We review de novo the trial court's summary judgment ruling. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995).

## A.

■ Under the No–Fault Act, an insurer was required to provide basic PIP coverage for reasonable and necessary medical care, rehabilitative care, lost wages, and death benefits in the event of an accident without regard to fault. §§ 10–4–706(1)(b)–(c). The No–Fault Act also required an insurer to provide and offer an option for APIP coverage in exchange for higher premiums. *See* § 10–4–710(2)(a). An insurer's offer of op-

tional APIP benefits was required to cover the same persons eligible to receive basic PIP benefits under sections 10–4–706 and 10–4–707, that is, named insureds, resident family members, guest occupants, and pedestrians. *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 552 (Colo.App.1998).

■ "When an insurer fails to offer the insured optional coverage that it is statutorily required to offer, additional coverage in conformity with the required offer is incorporated into the agreement by operation of law." *Thompson v. Budget Rent–A–Car Sys., Inc.*, 940 P.2d 987, 990 (Colo.App.1996); *accord Brennan*, 961 P.2d at 554.

■ "If the insurer fails to discharge its duty prior to the issuance of the policy, the duty continues and can be discharged only by an adequate notification and offer on some future occasion." *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo.1992)(discussing offers of uninsured/underinsured benefits). In the context of APIP coverage, "[a]n insurer's statutory duty is to *offer* APIP coverage, and it can discharge that duty even after a policy is issued." *Johnson v. Hartford Underwriters Ins. Co.*, 238 Fed.Appx. 362, 2007 WL 1830750 (10th Cir. No. 05–1442, June 27, 2007) (unpublished order and judgment) (citing *Parfrey); cf. Munger v. Farmers Ins. Exch.*, 174 P.3d 832, 835 (Colo.App. 2007)(using *Parfrey* analysis to determine adequacy of insurer's offer of APIP coverage).

In accord with these authorities, the operative question is not whether APIP benefits were initially offered or explained in writing before the initial purchase of a policy, but rather, it is whether the insurer provided the insured with the opportunity to purchase statutorily-compliant APIP benefits before the insured needed them. *See Reid v. GEICO Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir.2007) (upholding summary judgment for insurer where insured purchased policy over the telephone without the benefit of any written materials, reasoning that "any failure on GEICO's part [to initially offer or provide a written explanation of APIP] was cured long before Ms. Reid had her accident").

■ Here, it is undisputed that USAA offered Jewett APIP coverage on at least twelve occasions after his 1999 purchase of the policy and before his 2002 accident. Jewett asserts, however, that the offers were not statutorily compliant because they (1) did not explicitly list pedestrians and non-family occupants of the covered car as eligible to receive APIP benefits, and (2) were made in a manner not reasonably calculated to permit him to make an informed decision about purchasing APIP coverage. Again, we are not persuaded.

■ With regard to the first point, in applying Colorado law, the Tenth Circuit Court of Appeals differentiates between an offer of APIP benefits that expressly excludes, and an offer of APIP benefits that fails to explicitly list, statutorily-required categories of persons eligible for APIP benefits. In the former situation, the offer is insufficient. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 433 F.3d 703, 710 (10th Cir.2005) (an offer of APIP benefits that excludes any of these categories from coverage fails to comply with the No–Fault Act). In the latter situation, the offer may be sufficient. *See Hill v. Allstate Ins. Co.*, 479 F.3d 735, 740 (10th Cir.2007) (concluding, as a matter of law, that the offer need not specifically enumerate the types of persons covered by APIP benefits).

In this case, unlike in *Brennan* and *Clark*, pedestrians (and, for that matter, non-family members) were not expressly excluded from APIP coverage by the relevant policies or offers.

In each of the twelve subsequent offers of APIP coverage, USAA notified Jewett in Form 999CO that "[i]n Colorado, you are required to purchase basic Personal Injury Protection coverage (PIP) and have the option to select Additional Personal Injury Protection coverage (APIP) providing broader coverage." The USAA policy had included pedestrians and non-family occupants of the covered vehicle within the definition of persons entitled to basic PIP benefits. And USAA's written offers of PIP benefits again specifically referenced relatives, guest passengers in the covered vehicle, and pedestrians struck by the covered vehicle, as protected by basic PIP benefits, *immediately before*

explaining the availability of optional APIP benefits.

Although the APIP provisions of USAA's offers did not explicitly repeat the categories of persons covered under PIP, it is axiomatic that an offer of "broader coverage" necessarily applies to those persons already covered by lesser, mandatory PIP provisions. Because, in our view, this is the only reasonable manner in which to interpret the provisions of USAA's offers, we conclude, as a matter of law, that USAA's offers were sufficient to notify Jewett that APIP protections were available and offered in connection with pedestrians struck by, and non-family guest passengers in, the covered car. *Cf. Hill*, 479 F.3d at 741 ("[G]iven all the materials that were mailed and otherwise provided ... [the insureds] were adequately informed that pedestrians and passengers were eligible to receive [A]PIP benefits.").

We reject Jewett's assertion that the offers were not made in a manner reasonably calculated to inform him of his options.

■ In determining whether an insurer has adequately fulfilled its obligation to "offer" APIP, courts consider

such factors as the clarity with which the purpose of [APIP] coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of [APIP] coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Munger*, 174 P.3d at 835 (quoting *Parfrey*, 830 P.2d at 913, and using *Parfrey* factors to determine adequacy of insurer's offer of APIP coverage).

■ In this assessment, no one factor is dispositive; the adequacy of the insurer's notification and offer must ultimately be resolved "under the totality of circumstances." *Munger*, 174 P.3d at 834 (quoting *Parfrey*, 830 P.2d at 914).

Here, although Jewett originally purchased his policy over the telephone, where APIP may or may not have been fully discussed, he subsequently received at least twelve forms from USAA, each advising him of the availability of APIP. These forms clearly set forth the purposes of PIP, the coverages available, and the premiums for various options, and they gave Jewett the opportunity to purchase APIP simply by checking a box on the form and returning it to USAA. Jewett never purchased APIP benefits from USAA, however, until October 2002, six months after the accident.

We conclude, as a matter of law, that the offers, and the manner in which the offers were made, were reasonably calculated to permit Jewett to make an informed decision about purchasing APIP benefits. *See, e.g., Reid*, 499 F.3d at 1167 (summary judgment in favor of the insurer affirmed where plaintiff purchased initial PIP policy over telephone, and similar types of subsequent written offers of APIP coverage were provided the insured by insurer); *Johnson*, (summary judgment on behalf of the insurer affirmed where insurer's offer of APIP coverage through the mail complied with § 10–4–710(2) ); *Padhiar v. State Farm Mut. Auto. Ins. Co.*, 479 F.3d 727, 732–35 (10th Cir.2007) (summary judgment for insurer affirmed where insurer made sufficient offer of optional APIP benefits through numerous written notices and documents which clearly informed the insureds that they could purchase APIP coverages).

Because USAA's offers of APIP coverage were adequate, and because Jewett undisputedly failed to exercise his option to purchase those benefits before his accident, we conclude that the underlying insurance contract cannot now be reformed to provide him with those benefits as of the time of the accident. *See Carder, Inc. v. Cash*, 97 P.3d 174, 180–81 (Colo.App.2003)("Reformation of a written instrument is appropriate only when the instrument does not represent the true agreement of the parties. The purpose of reformation is to give effect to the parties' actual intentions.").

In so concluding, we necessarily reject Jewett's assertion that the trial court erred in not allowing him a reasonable opportunity to develop through discovery facts which would have created one or more material

issues of fact for the trier of fact to resolve. The matters he identified in his opening brief for discovery—all of which pertain to the circumstances surrounding his initial acquisition of insurance from USAA—are immaterial, in light of our recognition that USAA could, and did, subsequently cure any deficiencies in the manner in which APIP was initially offered to Jewett. *Cf. A–1 Auto Repair & Detail, Inc. v. Bilunas–Hardy*, 93 P.3d 598, 604 (Colo.App.2004) (court does not abuse its discretion in denying C.R.C.P. 56(f) request for continuance where the movant has failed to demonstrate that the proposed discovery could produce facts that would preclude summary judgment).

Because Jewett's reformation claim against USAA fails, and because Jewett's other claims against USAA are dependent on the reformation claim, the trial court properly granted summary judgment in favor of USAA and dismissed all Jewett's claims against it.

### B.

We decline to address Jewett's claim that he was also entitled to relief because USAA failed to provide him with a summary disclosure form when he originally purchased his policy, as required by section 10–4–111. Jewett did not raise this claim in his complaint, and, at oral argument before us, he withdrew it from further consideration.

### IV. Attorney Fees

Relying on section 10–4–708, Jewett originally requested an award of attorney fees incurred on appeal against both defendants. However, in light of American Standard's concession, he withdrew his request with respect to American Standard. And, inasmuch as he is not entitled to reformation or other relief from USAA, we conclude that attorney fees are not available against USAA either. *See Goodwin v. Homeland Cent. Ins. Co.*, 172 P.3d 938, 945 (Colo.App. 2007) (addressing § 10–4–708 request for fees).

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

The judgment in favor of USAA is affirmed, the judgment in favor of American Standard is vacated, and the case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Judge CASEBOLT and Judge NIETO * concur.