**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICKY EUGENE CLARK, on behalf
of himself and all others similarly
situated,

Plaintiff - Appellant,

v.

No. 01-1341

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, an Illinois corporation,

Defendant - Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 00-B-1841)**

Robert B. Carey, (Steve W. Berman, Hagens, Berman, LLP, Seattle, Washington,
with him on the briefs), The Carey Law Firm, Colorado Springs, Colorado, for
Plaintiff-Appellant.

Michael S. McCarthy, (Patrick T. Madigan, Marie E. Williams, with him on the
brief), Faegre & Benson, LLP, Denver, Colorado, for Defendant-Appellee.

Before **BRISCOE**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

**MURPHY**, Circuit Judge.

## I.  INTRODUCTION

Plaintiff-Appellant Ricky Eugene Clark filed a class action suit in Colorado District Court, County of Pueblo, against Defendant-Appellee State Farm Mutual Automobile Insurance Co. ("State Farm") for extended personal injury protection ("PIP") benefits under the Colorado Auto Accident Reparations Act ("CAARA"). *See* Colo. Rev. Stat. §§ 10-4-701 to -726 (2000).[1]  Clark sought reformation of an insurance policy issued by State Farm.  In addition, Clark brought claims for breach of contract for failure to pay extended PIP benefits, breach of the duty of good faith and fair dealing, willful and wanton breach of contract, and deceptive trade practices.  State Farm timely removed the action to federal district court and moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), which the district court granted.  This court has jurisdiction under 28 U.S.C. § 1291. Applying *Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550, 553 (Colo. Ct. App.), *cert. denied* (Colo. 1998), this court **affirms** the dismissal of the deceptive trade practices claims, **reverses** the dismissal of all other claims, and **remands** for further proceedings.

## II.  BACKGROUND

### A.  Factual Allegations

---

[1]Unless otherwise noted, all references to statutes in this opinion are to the Colorado Auto Accident Reparations Act, Colo. Rev. Stat. §§ 10-4-701 to -726 (2000).

Clark alleges the following facts in his complaint. On July 18, 1996, Clark was a pedestrian at an intersection in Pueblo, Colorado when he was struck by a vehicle driven by Monica Madrid. Clark suffered unspecified personal injuries and incurred medical expenses, rehabilitative expenses, and lost wages. The vehicle involved in the accident was owned by Hortencia Madrid, Monica's grandmother. At the time of the accident, Madrid's vehicle was insured under policy No. 643 0591-C01-06D issued by State Farm (the "Madrid policy"). Monica and Hortencia Madrid are not parties to this litigation.

The Madrid policy included the minimum level of no-fault coverage prescribed by CAARA. Before Hortencia Madrid purchased the policy, State Farm offered her extended PIP benefits for herself, her resident relatives, and passengers in her insured vehicle with her consent, but not for pedestrians. Following the accident, State Farm began paying PIP benefits to Clark in accordance with the minimum levels prescribed under section 706 of CAARA. Clark alleged that these payments, which covered medical expenses, rehabilitative costs, and lost wages, did not reimburse him to the full extent of his losses.

## B. Colorado Auto Accident Reparations Act

The stated statutory purpose of CAARA is to "avoid inadequate compensation to victims of automobile accidents." § 702; *see also Brennan*, 961

-3-

P.2d at 553. Colorado courts construe CAARA liberally to further its remedial and beneficial purposes. *See Brennan*, 961 P.2d at 553. CAARA requires that a policy include a minimum level of PIP benefits. *See* § 706(1). Specifically, section 706(1) requires a carrier to provide, without regard to fault, payments for medical expenses, rehabilitation expenses, and lost wages. *See* § 706(1)(b)(I), (1)(c)(I), (1)(d)(I). Section 706 sets dollar and time limits for each category of expense. *See id.* [2] Section 707 defines the categories of people who receive

_____

[2]Section 706 requires as minimum coverage, in relevant part:

(b)(I) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical, chiropractic, optometric, podiatric, hospital, nursing, x-ray, dental, surgical, ambulance, and prosthetic services, and nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing, performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle;
. . . .
(c)(I) Compensation without regard to fault up to a limit of fifty thousand dollars per person for any one accident within ten years after such accident for payment of the cost of rehabilitation procedures or treatment and rehabilitative occupational training necessary because of bodily injury arising out of the use or operation of a motor vehicle.
. . . .
(d)(I) Payment of benefits equivalent to one hundred percent of the first one hundred twenty-five dollars of loss of gross income per week, seventy percent of the next one hundred twenty-five dollars of gross income per week, and sixty percent of any loss of gross income per week in excess thereof, with the total benefit under this subparagraph (I) not exceeding four hundred dollars per week, from work the injured person would have performed had he not been

coverage under section 706 to include "1) the named insured, 2) resident relatives of the named insured, 3) passengers occupying the insured's vehicle with the consent of the insured, and 4) pedestrians who are injured by the covered vehicle." *Brennan*, 961 P.2d at 553; *see also* § 707(1). CAARA also requires every insurer to offer the named insured extended PIP benefits in exchange for higher premiums. *See* § 710(2)(a); *Thompson v. Budget Rent-A-Car Sys., Inc.*, 940 P.2d 987, 990 (Colo. Ct. App. 1996). These extended PIP benefits do not place time or dollar limitations on medical expense claims and offer the possibility of greater wage loss reimbursements. [3] The version of section 710

injured during a period commencing the day after the date of the accident, and not exceeding fifty-two additional weeks.

§ 706(1).

[3]Section 710(2)(a) provides in pertinent part:

Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in section 10-4-706, at the option of the named insured:

(I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or

(II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

effective at the time of Clark's accident, which applied to policies issued on or after July 1, 1992, does not list or refer to persons eligible for extended coverage. *See* § 710. Moreover, section 707, which sets out the four categories of PIP benefits recipients, refers only to the minimum PIP benefits available under section 706 and does not reference the enhanced benefits set out in section 710. *See* § 707.

## C. *Brennan v. Farmers Alliance Mutual Insurance Co.*

Approximately nineteen months after Clark's accident, the Colorado Court of Appeals decided *Brennan*. 961 P.2d 550. In *Brennan*, a pedestrian injured in a car accident sued Farmers Alliance, seeking enhanced PIP benefits under section 710. *See id.* at 552. Farmers Alliance did not offer extended PIP benefits to cover pedestrians. *See id.* The trial court reformed the policy to incorporate the extended benefits. *See id.* In entering summary judgment for the plaintiffs, the court awarded the difference between the maximum aggregate amount provided by the policy and the amount of minimum PIP benefits already paid to the plaintiffs. *See id.* On appeal, Farmers Alliance argued that the extended PIP benefits under section 710 did not include pedestrians and it was therefore not obligated to pay additional benefits. *See id.* at 553. In rejecting this argument,

---

§ 710(2)(a). The insurer, however, may cap the total limit on all PIP benefits set forth in section 706(1)(b) to (1)(e) at $200,000 for any person per accident. *See id.* § 710(2)(b).

the Colorado Court of Appeals explained that although section 710(2)(a) does not specify the persons entitled to extended benefits, CAARA's statutory scheme indicated that section 710 "describes an option to purchase coverage, but at higher limits, for the same persons and under the same conditions applicable to mandatory basic PIP coverage [outlined in section 706]." *Id.* The court also relied on the fact that section 710 covers "injured person[s]" and not merely "insured[s]," which suggests that section 710 covered pedestrians. *See id.* at 554. Because Farmers Alliance did not offer extended PIP benefits to cover pedestrians in conformity with CAARA, the court read the additional coverage into the policy and affirmed the reformation of the policy. *See id.* at 554. The court also affirmed the trial court's judgment in favor of the plaintiffs for the difference between the minimum PIP benefit levels and the maximum PIP aggregate amount provided under the policy. *See id.* at 557.

The Colorado Court of Appeals proceeded, however, to affirm the dismissal of the plaintiffs' breach of contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and willful and wanton breach of contract claims. *See id.* at 555-57. In addressing the breach of contract claim, the *Brennan* court concluded that "until the contract was reformed, there was no policy in existence which granted plaintiffs rights for additional PIP benefits." *Id.* at 556. The *Brennan* court acknowledged that CAARA was unclear about

whether extended PIP benefits under section 710 applied to pedestrians and that no appellate court had previously interpreted the scope of section 710. *See id.* "[U]nder such circumstances, it is not inappropriate to apply such interpretation [of CAARA] prospectively." *Id.* The court also justified this result by explaining that "in insurance law, until an insurance contract is reformed, the insurer has no obligation to conform to such [a] 'reformed' policy." *Id.*

For similar reasons, the Colorado Court of Appeals affirmed the dismissal of the breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and willful and wanton breach of contract claims. *See id.* at 556-57. The court emphasized that these claims could not survive because there was no breach of contract, and therefore no unreasonable or reckless withholding of benefits, until the contract was reformed. *See id.* The court also explained that the insurer's actions prior to the decision were "not incorrect" based on its reliance on the language of the policy and its "concomitant failure to anticipate" the decision in *Brennan*. *See id.* at 557.

The Colorado Supreme Court denied the petition for certiorari in *Brennan* on August 24, 1998. *See id.* at 550. Sometime after that date, State Farm issued an amendment to the Madrid policy which replaced the section on no-fault coverage. Among other things, the amendment eliminated the preexisting

distinction between pedestrians and other categories of insureds [4] in terms of PIP benefits. Clark's complaint alleges that at the time State Farm issued this amendment, his losses exceeded the minimum PIP coverage limits provided under the Madrid policy. Clark, however, does not allege that he submitted any claims to State Farm for processing after *Brennan*.

On appeal, State Farm does not dispute that Clark was entitled to the minimum level of PIP benefits mandated under section 706. It is also undisputed that State Farm has paid Clark those benefits in a timely manner.

## D. District Court Proceedings

On August 24, 2000, Clark brought the instant suit on behalf of all injured persons covered by a State Farm policy who were not offered and paid extended PIP benefits under section 710. In reliance on *Brennan* and State Farm's failure to offer extended PIP benefits to Madrid for injured pedestrians, he sought reformation of the Madrid policy to include extended PIP benefits in accordance with section 710. In addition, Clark brought claims for breach of contract for failure to pay extended PIP benefits, breach of the duty of good faith and fair dealing, willful and wanton breach of contract, and deceptive trade practices.

The district court dismissed all of Clark's claims because it concluded that *Brennan* could not be applied retroactively, relying on a statement in *Brennan*

---

[4]Under the Madrid policy, a "pedestrian" is defined as an "insured."

that it was appropriate to apply the decision prospectively. The district court also reasoned that retroactive application of the new rule announced in *Brennan* would undermine widespread reliance on the prior understanding of section 710's scope, which did not include pedestrians. Retroactive application of *Brennan*, the district court explained, would prove "both inequitable and impracticable." Clark appealed the district court's dismissal of all claims.

## III. DISCUSSION

### A. Standard of Review

This court reviews *de novo* a dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). We accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* A dismissal pursuant to 12(b)(6) will be affirmed "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002) (quotation omitted).

The parties agree on appeal that Colorado substantive law governs this case. *See Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000) (applying substantive law of the state parties agree controls). In exercising *de novo* review, this court affords no

-10-

deference to a district court's interpretation of state law . *See Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 727 (10th Cir. 1991) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)). This court must determine issues of state law as we believe the highest state court would decide them. *See Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1492 n.10 (10th Cir. 1995). Although we are not bound by a lower state court decision, "decisions of a state's intermediate appellate courts are some evidence of how the state supreme court would decide the issue, and we can consider them as such, even if they are not binding precedent under state law." *Id.* This court is thus not bound by the Colorado Court of Appeal's decision in *Brennan*. In the absence, however, of any compelling reason to disregard *Brennan*, no Colorado Supreme Court precedent to the contrary, and no argument by the parties that we should disregard *Brennan* as a nonbinding decision, we follow *Brennan* in this case. *See Romero v. Int'l Harvester Co.*, 979 F.2d 1444, 1449 n.3 (10th Cir. 1992).

## B. Entitlement to Extended PIP Benefits

Reformation of an insurance contract usually occurs to make the policy express the true intent of the parties. *See Thompson*, 940 P.2d at 990. When a party alleges that a policy violates a statute, however, reformation may be required to ensure that coverage meets the statutory requirements. *See id.* In Colorado, a pedestrian to whom PIP benefits are payable is a third-party

beneficiary of the policy and has standing to bring reformation and contract claims against the insurer. *See id.* at 989; *see also* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 26:1 (3d ed. 1995 & Dec. 2001 Update) [hereinafter *Couch*] ("[W]hile it is the agreement of the insured and the insurer that is the focal point of reformation, third-party beneficiaries to the insurance contract can also seek reformation of the provisions.").

In *Brennan*, the Colorado Court of Appeals concluded that "when . . . an insurer fails to offer the insured optional coverage that satisfies [CAARA], additional coverage in conformity with the offer mandated by statute *will* be incorporated into the policy." *Brennan*, 961 P.2d at 554 (emphasis added). It is undisputed that State Farm did not offer Hortencia Madrid the option of purchasing extended PIP benefits which covered injured pedestrians. Therefore, under *Brennan*, Clark is entitled as a matter of law to reformation of the Madrid policy to include extended PIP benefits. *See id.* On remand, the district court must determine the amount of extended PIP benefits, if any, to which Clark is entitled.

State Farm advances two arguments why Clark is not entitled to extended PIP benefits. First, State Farm contends that *Brennan* explicitly states that its decision applies prospectively. Although *Brennan* included language that it was "not inappropriate to apply [the trial court's] interpretation [of CAARA]

-12-

prospectively," this statement occurs in *Brennan* 's discussion of the contract, tort, and statutory claims, and not the reformation claim, which the Colorado Court of Appeals authorized. *See id.* at 554. Discussions in judicial decisions should be considered in context. *See, e.g.* , *Lujan v. Colo. State Bd. of Educ.* , 649 P.2d 1005, 1018 n.13 (Colo. 1982) (en banc); *People v. St. John* , 934 P.2d 865, 866 (Colo. Ct. App. 1996). The *Brennan* court addressed the plaintiffs' reformation claim by explaining that the insurer did not offer extended PIP benefits as required by CAARA. *See Brennan* , 961 P.2d at 554. In such circumstances, "additional coverage in conformity with the offer mandated by statute will be incorporated into the policy. Thus, the trial court's judicial reformation of the policy to reflect coverage of Joshua Brennan was correct." *Id.* (citations omitted). If *Brennan* had stated a purely prospective rule, the plaintiff in that case would not have been awarded extended PIP benefits. *See People e x rel. C.A.K.*, 652 P.2d 603, 607 (Colo. 1982) (en banc) ("A purely prospective rule does not apply even to the parties in the case where the rule was announced."). State Farm's reliance on language in a different part of the *Brennan* decision is therefore misplaced, and the district court erred by relying on this statement in concluding that *Brennan* should be applied only prospectively.

State Farm next argues that *Brennan* should not be applied retroactively in this case because *Brennan* does not satisfy Colorado's test for retroactivity. In

-13-

*Brennan*, however, the Colorado Court of Appeals did not announce a new rule of procedure or substantive law. Rather, the court construed CAARA to require that extended PIP benefits be payable to pedestrians. Because that coverage was not offered to the insured, the court applied the rule established in *Thompson* to conclude that the insurance contract must be reformed to include extended PIP benefits for pedestrians. *See Brennan*, 940 P.2d at 554-56.

In *People ex rel. C.A.K.*, the Colorado Supreme Court adopted and applied the retroactivity standards for civil cases set out in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971). *See* 652 P.2d at 607. In *Chevron*, the Court outlined three factors applicable to the determination of whether a ruling should be applied prospectively only. *See* 404 U.S. at 106-07. "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id*. (citations omitted). State Farm argues that *Brennan* announced a new rule of law because, prior to *Brennan*, no court had decided whether section 710 applied to pedestrians. State Farm's argument must fail in light of the Colorado Supreme Court's decision in *Broyles v. Fort Lyon Canal Co*. In *Broyles,* the Colorado Supreme Court rejected the appellant's argument that a judicial decision should not be applied retroactively stating:

> In *De Beque,* however, we did not establish a new principle of law. Rather, we merely interpreted and applied a statute that was enacted prior to the time Broyles was required to file his application. Accordingly, any contention that *De Beque* . . . is inapplicable to this case is erroneous.

695 P.2d 1136, 1144 (Colo. 1985). Because *Brennan* involved the interpretation of a statute enacted prior to the time the Madrid policy was issued, it did not establish a new principle of law. Thus, it does not satisfy the first factor and the interpretation of section 701 contained in *Brennan* must be applied retroactively. *See Broyles*, 695 P.2d at 1144.

The holdings in *Brennan* and *Thompson* mandate that the Madrid policy be reformed to include extended PIP benefits and that pedestrians, like Clark, must be included in the class of beneficiaries eligible to receive those benefits. *See Brennan*, 961 P.2d at 554; *Thompson*, 940 P.2d at 990. The *Brennan* court, however, also concluded that trial court has the discretion to ascertain the date of reformation because reformation is an equitable remedy. *See* 961 P.2d at 556. The *Brennan* court then concluded that, under the particular circumstances presented in that case, the district court did not abuse its discretion when it reformed the contract from the date the trial court issued its decision. *See id*. As explained in Section III.C., *infra*, the determination of the effective date of reformation affects the viability of a plaintiff's contract, tort, and statutory claims, but not the reformation of the policy, which was mandated by *Brennan*.

As in *Brennan*, the district court in this case must determine, based on the particular circumstances presented here, the effective date of reformation for the Madrid policy.

## C. Effective Date of Reformation

Although Clark is entitled to reformation under *Brennan*, the district court must also determine, through the exercise of its equitable powers, the effective date of reformation. The Colorado Court of Appeals in *Brennan* affirmed the award of extended PIP benefits, but it nevertheless emphasized that the effective date of reformation was the date the district court ordered reformation. *See, e.g.*, *id.* at 556 ("[U]ntil the contract was reformed, there was no policy in existence which granted plaintiffs rights for additional PIP benefits."). This decision was based on the court's conclusion that the trial court properly exercised its equitable powers:

> [I]n fashioning its equitable remedy, the trial court ascertained that Farmers should not necessarily have anticipated that it would be obligated to pay [extended PIP] benefits and ruled, therefore, that *Farmers' contractual obligation to pay additional PIP benefits to Joshua Brennan did not arise until the insurance policy was judicially reformed*.

*Id.* (emphasis added). The Colorado Court of Appeals "ha[d] no reason to quarrel with this exercise of discretion." *Id.* It further explained that the insurer in *Brennan* had used a standard industry form endorsement, CAARA "was unclear on this issue[,] and no appellate court had yet determined whether § 10-4-

-16-

710 . . . applied to pedestrians." *Id.* "*[U]nder such circumstances*, it is not inappropriate to apply such interpretation prospectively." *Id.* (citing *Ground Water Comm'n v. Shanks*, 658 P.2d 847 (Colo. 1983) (en banc)) (emphasis added). The trial court in *Brennan* thus made an equitable determination that, based on the particular circumstances in that case, its reformation of the policy applied only from the time that it reformed the contract. Because the duty to pay additional PIP benefits did not arise until the date of reformation, the insurer in *Brennan* did not breach any contractual, tort, or statutory duties. *See id*. at 556-57.

This court holds that, pursuant to *Brennan*, the effective date of reformation is an equitable decision to be determined by the trial court based on the particular circumstances of each case. On remand, the district court should decide as an initial matter the effective date of reformation. Possible effective dates of reformation include, but are not necessarily limited to, the following: (1) the date the Madrid policy was issued;[5] (2) the date the trial court in *Brennan* reformed the policy; (3) the date of the *Brennan* decision; and (4) the date the district court on remand reforms the contract.

---

[5]Clark asserts that the rule of *Brennan v. Farmers Alliance Mutual Insurance Co.*, 961 P.2d 550, 554 (Colo. Ct. App.), *cert. denied*, (Colo. 1998), applies from July 1, 1992, the date that the version of section 710 discussed in *Brennan* became effective. In this case, however, there was no contract in existence at the date and reformation therefore cannot be effective until issuance of the Madrid policy.

In exercising its equitable power, the district court should consider all appropriate factors, including the following: (1) the degree to which reformation from a particular effective date would upset past practices on which the parties may have relied and whether State Farm anticipated the rule in *Brennan*; (2) how reformation from a particular effective date would further or retard the purpose of the rule in *Brennan*; and (3) the degree of injustice or hardship reformation from a particular effective date would cause the parties. *Cf. Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 112 (Colo. 1992) (en banc). [6] These factors "do not necessarily have equal weight but are to be evaluated on the basis of the strength of the equitable and policy considerations underlying each." *Marinez v. Indus. Comm'n*, 746 P.2d 552, 557 (Colo. 1987) (en banc). Relevant evidence might include, for example, whether State Farm anticipated the *Brennan* decision, compiled information of *Brennan*'s effect on claims processing, relied on the interpretation of CAARA rejected in *Brennan*, or had the ability to notify or considered notification of insureds and third-party beneficiaries about the *Brennan* decision.

---

[6]These factors are adapted from Colorado's test for determining whether a judicial decision should be applied retroactively. *See In re C.A.K.*, 652 P.2d 603, 607 (Colo. 1982) (en banc). The *Brennan* court relied upon Colorado retroactivity jurisprudence in affirming the district court's equitable determination to reform the contract prospectively with the result that, until the district court's reformation ruling, Farmers Alliance had not breached the insurance contract in failing to pay extended PIP benefits. *See Brennan*, 961 P.2d at 556 (citing *Ground Water Comm'n v. Shanks*, 658 P.2d 847 (Colo. 1983) (en banc)).

**D. Remaining Claims**

The viability of Clark's breach of contract, breach of the duty of good faith and fair dealing, and willful and wanton breach of contract claims depends on the effective date of reformation. These contract, tort, and statutory claims, however, will remain viable only if the district court in the exercise of its equitable power determines that reformation should occur as of a date preceding its order of reformation. Only under those circumstances would there be an extant contract, tort, or statutory duty to be breached. Conversely, if reformation is ordered to correspond to the date of entry of the order of reformation, there would be no pre-existing duty to pay extended PIP benefits. *See Brennan*, 961 P.2d at 556-57; *Couch* § 26:3 ("The fact that the insured may be entitled to obtain a reformation of the policy does not impose any obligation upon the insurer to conform to such 'reformed' policy before a court has made such reformation.").

We affirm, however, the dismissal of Clark's claims of deceptive trade practices under the Colorado Consumer Protection Act. *See* Colo. Rev. Stat. §§ 6-1-101 to -908 (2000). Clark alleged in his complaint that State Farm knowingly made false representations about its insurance policy and misrepresented the quality of its policy by stating that it will pay benefits "in accordance with the no-fault act for bodily injury to an insured." Clark, however, simply reiterates his claim on appeal without any supporting legal

authority or argument. *See Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992). As such, we conclude that Clark waived these claims. *See id*.

## IV.  CONCLUSION

*Brennan* held, as a matter of law, that any insurance policy under which the named insured was not offered extended PIP benefits for injured pedestrians must be reformed to include those benefits. We therefore **REVERSE** and **REMAND** the district court's dismissal of Clark's reformation claim. As in *Brennan*, Clark is entitled to extended PIP benefits for which he has valid claims. Clark's recovery of further sums is dependent upon the viability of his breach of contract, breach of the duty of good faith and fair dealing, and willful and wanton breach of contract claims, which in turn depend on the district court's equitable determination of the effective date of reformation following any appropriate discovery. Accordingly, this court **REVERSES** the dismissal of those claims and **REMANDS** to the district court for further proceedings consistent with this opinion. Finally, the district court's dismissal of Clark's deceptive trade practices claims is **AFFIRMED**.