**TRAVELERS INDEMNITY COMPANY OF ILLINOIS, a Connecticut corporation, Plaintiff,**

v.

**David HARDWICKE, an individual, Defendant,**

v.

**Taggart & Associates, Inc., a Colorado Corporation Third–Party Defendant.**

No. CIV.A.02–F–1983 (BNB).

United States District Court, D. Colorado.

Aug. 30, 2004.

Kevin F. Amatuzio, Lori Kathryn Bell, Montgomery, Kolodny, Amatuzio & Dusbabek, LLP, Denver, CO, for Plaintiff.

J. Todd Tenge, Tenge Law Firm, LLC, Louisville, CO, for Defendant.

## ORDER ON PENDING MOTIONS

FIGA, District Judge.

This matter comes before the Court on three motions filed by Plaintiff Travelers Indemnity Company of Illinois ("Travelers"), and one motion filed by Third–Party Defendant Taggart & Associates, Inc. ("Taggart"). On May 3, 2004, Travelers filed motions to dismiss Hardwicke's sixth counterclaim for relief, which alleges violations of the Colorado Consumer Protection Act ("CCPA"), particularly C.R.S. § 6–1–105(1)(e), (g), (*l*) and (u) (Dkt.# 54), and Hardwicke's seventh counterclaim for relief, which alleges fraud (Dkt.# 55). On May 14, 2004, Third–Party Defendant Taggart joined in Travelers' motion to dismiss the sixth counterclaim (Dkt.# 63) to the extent it alleged violations of the CCPA by Taggart, and adopted the arguments advanced by Travelers. On June 15, 2004, Travelers filed a motion for partial summary judgment as to the Hardwicke's first counterclaim for relief (Dkt.# 70) which seeks reformation of an insurance policy issued by Travelers to Hardwicke. The motions have been fully briefed.

The Court also notes that by virtue of the Final Pretrial Order entered August 9, 2004, this case has been set for a four-day jury trial to commence before this Court on September 13, 2004.

For the reasons set forth below, the Court GRANTS Travelers motion to dismiss the seventh counterclaim, sounding in fraud, and Travelers' and Taggart's motions to dismiss the sixth counterclaim, alleging violations of the CCPA. The Court DENIES without prejudice Travelers' motion for partial summary judgment at this time because the Court finds that the relief requested is not ripe.

THE COURT FURTHER ORDERS that the jury trial set for four days commencing September 13, 2004 is VACATED. The Court, *sua sponte*, bifurcates all of Hardwicke's counterclaims other than the first counterclaim for reformation. On **September 13, 2004, beginning at 10:30 a.m.,** the Court will conduct a trial to the Court on Travelers' claim for declaratory relief and Hardwicke's first counterclaim for reformation. Thereafter, depending on the outcome of that trial, the Court will determine how to proceed with Hardwicke's remaining claims.

## BACKGROUND

The dispute between the parties centers upon insurance coverage for a two-car accident involving Defendant Hardwicke which occurred on May 30, 2001 at or near the intersection of 40th and Table Mesa in Boulder, Colorado. Hardwicke suffered injuries as a result of the accident. He was insured by Plaintiff Travelers under a policy first issued in November 1996. That policy, after several renewals, provided for "basic" personal injury protection coverage. Hardwicke claims either Travelers or Taggart, the independent insurance agent that actually sold the policy to Hardwicke, should have offered him the opportunity to purchase enhanced or additional personal injury protection ("PIP") benefits, and failed to do so at the time the policy was sold. Colorado law then in effect, namely C.R.S. § 10–4–710(2)(a), re-

quired insurance carriers to offer enhanced personal protection coverage.[1]

Based on Hardwicke's assertion that he was entitled to additional PIP benefits that had not been offered to him, Travelers paid some PIP benefits in excess of what was required under the policy. (Final Pretrial Order at 4). However, when Travelers allegedly obtained information indicating to it that Hardwicke had been offered and declined the additional PIP protection, it ceased paying benefits at the enhanced level. Hardwicke continued to press for the additional benefits, claiming that they had not been offered to him, and demanding unlimited PIP benefits. Hardwicke claims damages beyond the asserted cap of $200,000, including past and future wage losses of approximately $685,000, plus medical and rehabilitative expenses.

As the parties were not in agreement as to whether such additional PIP coverage had been offered, Travelers filed this action on October 17, 2002 seeking a declaratory judgment, claiming that Hardwicke is not entitled to the additional PIP benefits which he claims as there was no failure to offer such benefits, or alternatively, if he is entitled to additional PIP benefits due to alleged failure to offer expanded PIP benefits, that PIP benefits under the policy for the accident are limited by the policy's terms and applicable law to $200,000.

Hardwicke moved to dismiss the action filed by Travelers, asserting a lack of complete diversity between necessary parties. By Order entered March 31, 2004, this Court denied Hardwicke's motion. In the same order, this Court denied Travelers' motion for summary judgment on its declaratory judgment claim as there were material facts in dispute as to what discussions had occurred between Hardwicke and the insurance agents at the time the policy was purchased. Thereafter, on April 13, 2004, Hardwicke filed an amended answer to the complaint for declaratory relief, counterclaims against Travelers, a third-party complaint joining Taggart, and a demand for jury trial on issues triable to a jury.

Hardwicke asserts seven counterclaims for relief. His first claim seeks reformation of the insurance policy to provide for additional PIP benefits unlimited by time or amount. Hardwicke bases his first counterclaim on *Thompson v. Budget Rent–A–Car Systems, Inc.,* 940 P.2d 987 (Colo.App.1996), and *Brennan v. Farmers Alliance Ins. Co.,* 961 P.2d 550 (Colo.App. 1998), which he claims mandate that his policy with Travelers must be reformed as a matter of law to provide him unlimited, expanded PIP coverage. Hardwicke's second counterclaim alleges bad faith breach of the insurance contract by Travelers. His third counterclaim alleges negligence *per se* against Travelers and Taggart for not offering the enhanced PIP benefits as required by C.R.S. § 10–4–710. His fourth counterclaim alleges negligence against Taggart for failing to meet its "duty to act in the best interest of Hardwicke in offering the best and most comprehensive policy available" and against Travelers for failing to train its independent agents to be certain they were offering additional PIP protection. His fifth counterclaim alleges a breach of fiduciary duty by Taggart for failing to offer him extended or enhanced PIP benefits as required by C.R.S. § 10–4–710. His sixth

---

1. C.R.S. § 10–4–710(2)(a), in effect at the time of plaintiff's accident, provided: "Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in § 10–4–706, at the option of the named insured [certain types of enhanced PIP coverage]." Colo. Sess. Laws 1992, ch. 219 at 1779. *Fazio v. State Farm Mut. Auto. Ins. Co.,* 55 P.3d 229, 230–231 (Colo.App.2002).

counterclaim alleges violations by Travelers and Taggart of the CCPA. His seventh counterclaim alleges an "intentional violation of the Colorado Auto Reparations Act/Fraud." The Court assumes Hardwicke is in fact referring to the Colorado Auto Accident Reparations Act ("CAARA") which is the Act containing C.R.S. § 10–4–710.

As noted above, Travelers has moved to dismiss the sixth and seventh counterclaims for relief and Taggart has joined in the motion to dismiss the sixth counterclaim.

**HARDWICKE'S SEVENTH COUNTERCLAIM FOR RELIEF**

■ Travelers' motion to dismiss characterizes Hardwicke's seventh counterclaim for relief as a claim for fraud, and argues that it fails to state a claim under Colorado law. Travelers argues that the claim states no knowing false representation made by it to Hardwicke, on which Hardwicke reasonably relied, as required by the Colorado law of common law fraud.

In his opposition to the motion, Hardwicke does not take issue with Travelers' characterization of his seventh counterclaim. Rather, he argues, the claim states the elements of a fraud claim under Colorado law. He asserts that the misrepresentation was the failure or refusal to advise, inform or offer him additional PIP benefits. He states that misrepresentation is an omission.

The Court agrees with Travelers that the seventh counterclaim does not state a claim for common law fraud. It does not contain allegations of a false, material representation. Nor does it contain allegations of the omission of facts, in connection with a material representation, necessary to make the material representation not misleading.

■ What the seventh counterclaim appears to allege is a an effort by Travelers to avoid the mandatory requirement of the statute to offer additional PIP benefits. Yet Hardwicke does not argue such a claim, and in any event cites no authority for the bringing of a private right of action against an insurer who seeks to evade the statute. Moreover, to the extent the courts have recognized a remedy for non-compliance with the statute, that remedy is reformation of an insurance contract in non-compliance with the statute. *See Brennan v. Farmers Alliance Ins. Co., supra.* Hardwicke seeks this very relief in his first counterclaim. Finally, although Hardwicke alleges that Travelers may have sought to avoid the statute in detriment to himself, and to others, he does not have standing to assert the claims of "others" and he does not here seek class action status. *Cf. Clark v. State Farm Mutual Automobile Insurance Co.,* 319 F.3d 1234, 1240 (10th Cir.2003). Accordingly, the Court GRANTS Travelers' motion to dismiss the seventh counterclaim for relief.

**HARDWICKE'S SIXTH COUNTERCLAIM FOR RELIEF**

■ In his sixth counterclaim for relief, Hardwicke alleges that Travelers and Taggart violated the Colorado Consumer Protection Act by making knowingly "false representations as to the uses and benefits of its services provided under the insurance contract;" knowingly "false representations that its services and product were of a particular standard, quality and grade;" knowingly "false representations in its advertisements with the intent not to sell its services as advertised" and "failed to disclose material information concerning its goods and services, which information was known at the time of its advertisements and sales, and such failure to disclose was intended to induce Hardwicke to enter into the insurance contract with the Traveler's and to purchase his auto insur-

ance through Taggart's agency." (Counterclaims, ¶¶ 65, 66, 67 and 68).

Travelers and Taggart assert that these allegations fail to state a claim under the CCPA because they fail to allege an intentional misrepresentation, as required by the statute, and fail to allege that the conduct had a significant public impact, as required by Colorado case law.

■ The CCPA, C.R.S. § 6–1–105(1), identifies a number of practices which it deems to be deceptive trade practices. Hardwicke's sixth counterclaim alleges violations of sub-paragraphs (e), (g), (*l*) and (u) of C.R.S. § 6–1–105(1). As Travelers argues, and as is apparent from Hardwicke's allegations, each of these sub-paragraphs requires either a knowingly false representation, a false or misleading statement, or a failure to disclose material information concerning goods, services or property. As stated by the Colorado Supreme Court: "Section 6–1–105(1)(e) requires that to establish a deceptive trade practice, the plaintiff must show that a defendant 'knowingly makes a false representation.'" *Rhino Linings USA, Inc., v. Rocky Mountain Rhino Lining, Inc.,* 62 P.3d 142, 147 (Colo.2003). Such misrepresentation must be one that "induces a party's action or inaction." *Id.*

This Court has found with respect to Hardwicke's fraud claim that the alleged failure to offer Hardwicke enhanced PIP benefits, assuming it occurred, does not amount to a false representation, a misleading statement or an omission to disclose material information necessary to make a representation made not misleading.

■ In addition, in order for an alleged deceptive practice to be actionable, the claimant must establish that the challenged practice significantly impacts upon the public as actual or potential consumers, and is not merely a claim involving a private wrong involving a contractual relationship. *Rhino Linings USA, supra,* 62 P.3d at 142, 144, 148–49. In his sixth counterclaim, Hardwicke does not allege a significant impact upon the public from the alleged deceptive practices. Rather, the only alleged impact is on Hardwicke, who claims to have been induced to purchase insurance and who claims to have sustained damages as a result. (Counterclaims, ¶¶ 68, 70).

In his opposition to the motion to dismiss, Hardwicke refers to deposition testimony purportedly given by an employee of agent Taggart and by an employee of Travelers described as "the PIP adjuster handling the Hardwicke claim for Traveler's." Hardwicke asserts the deposition testimony supports the notion that the alleged practices had significant public impact. (Hardwicke's response to motion to dismiss at 5 and n. 1). A copy of this testimony has not been provided to the Court, but even accepting Hardwicke's characterization of the testimony as accurate, the Court does not view this testimony, as demonstrating the required significant public impact. At most, it shows a few situations where additional PIP benefits may not have been offered, or where the agent advised insureds that there were preferable methods for insuring against lost wages. In *Rhino Linings, supra,* the Court found that there was no record to justify a finding of significant public impact where three of some 550 dealers were potentially affected by the alleged practice. *Id.,* 62 P.3d at 150.

This Court is also informed on its view regarding the absence of the significant public impact required to establish a claim under the CCPA by the recent decision in *Coors v. Security Life of Denver Insurance Co.,* 91 P.3d 393, 399 (Colo.App.2003) in which the Court held that overcharging

on insurance premiums to 200 out of 20,-000 customers (1%) did not rise to the level of broad public impact. (The Colorado Supreme Court granted certiorari on this issue on May 24; 2004, nonetheless the Court of Appeals decision remains the applicable law in Colorado.) In addition, this Court notes that in *Clark v. State Farm Mutual Automobile Insurance Co., supra,* the Court affirmed a dismissal of plaintiff's claim under the CCPA brought on facts and circumstances almost identical to those pled by Hardwicke. *Id.,* 319 F.3d at 1244.

Hardwicke's sixth counterclaim under the CCPA fails to allege the required knowing false statements and the required significant public impact to state a claim under that statute, and therefore is dismissed.

## TRAVELERS' MOTION FOR PARTIAL SUMMARY JUDGMENT

■ In its motion for partial summary judgment, apparently directed at Hardwicke's first counterclaim seeking reformation[2], Travelers argues that even if reformation of the insurance policy is granted as requested by Hardwicke, the maximum medical, rehabilitation and wage loss benefits that should be allowed are the $200,000 limitation set forth in section IV of the relevant policy. (Exhibit B to Travelers' Motion for Partial Summary Judgment.) Travelers essentially bases this argument on the reformation decision rendered by the court in *Brennan v. Farmers Alliance Ins. Co., supra,* in which the court directed up to the $200,000 maximum benefits provided in a policy similar to the one issued to Hardwicke, and the reformation decision rendered recently by Chief Judge Babcock in *Clark v. State Farm Mutual Automobile Insurance Co.,* 292 F.Supp.2d

1252 (D.Colo.2003), after the case was remanded by the Tenth Circuit for a determination of additional PIP benefits pursuant to an order of reformation:

These cases appear to provide ample precedent for application of the limitations urged by Travelers in the event the instant policy is subject to being reformed. Yet, in both of these cases, it was admitted by the insurers that the additional PIP benefits had not been offered in compliance with C.R.S. § 10–4–710 and therefore the issue was the nature and extent of the reformation, not the need for reformation. In the instant case however, as indicated above, there is a material fact dispute as to whether or not the additional PIP benefits were offered to Hardwicke, and whether or not reformation is appropriate here at all. Until there is a determination of whether reformation must be undertaken, it is premature for this Court to define the contours of what that reformation might be, if any.

Moreover, in addition to a determination of the maximum amount of benefits that would be allowed in the event of reformation, the Court must decide the appropriate effective date of reformation applying a series of equitable factors set forth in the Tenth Circuit opinion in *Clark.* *See,* 319 F.3d at 1242–44. In making any determination regarding reformation of the amount of benefits, this Court would also have to determine the effective date of the reformation, applying these factors. Travelers' motion does not address the effective date of reformation and this Court will not do so in a vacuum without the evidence required to make a proper decision. Accordingly, at this time, Travelers' motion

---

**2.** The caption of the pleading states that it is a motion for partial summary judgment on "plaintiff's claim for policy reformation." As

Hardwicke is actually the defendant and proponent of this claim, the Court assumes this title is a misnomer.

for partial summary judgment is DE-NIED.

## *SUA SPONTE* BIFURCATION OF HARDWICKE'S COUNTERCLAIMS

■ Hardwicke's remaining counterclaims for bad faith denial of coverage, negligence, negligence *per se,* and breach of fiduciary duty, all depend on whether or not the insurance contract is reformed. *See Clark, supra,* 319 F.3d at 1244. These claims asserted by Hardwicke, like the remaining claims asserted in *Clark,* will remain viable only if this Court determines both a) that reformation should occur, and b) that reformation should occur as of a date preceding this Court's order. Until these two determinations are made, Hardwicke's remaining counterclaims should be and are stayed. Moreover, since both the declaratory judgment sought by Travelers and the first counterclaim for reformation sought by Hardwicke are matters tried to the Court without a jury, this Court deems that the most efficient way to proceed is to brings those claims to trial first.

Accordingly, the trial set for September 13, 2004, will proceed as a trial to the Court only on the declaratory judgment claim of Travelers and the reformation counterclaim of Hardwicke.

## CONCLUSION

Travelers' Motion to dismiss seventh counterclaim for relief (Dkt.# 55) is GRANTED;

Travelers' and Taggart's Motions to dismiss sixth counterclaim for relief (Dkt.# 54 and 63) are GRANTED;

Travelers' Motion for partial summary judgment as to Hardwicke's first counterclaim (Dkt.# 70) is DENIED.