**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIAM LOPEZ,

        Plaintiff-Counter-
        Defendant-Appellant,

v.

UNITED FIRE AND CASUALTY
COMPANY, an Iowa corporation,

        Defendant-Counter-
        Claimant-Appellee,

and

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, a
Wisconsin corporation,

        Defendant.

No. 07-1250
(D.C. No. 05-cv-2603-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

William Lopez appeals the district court's grant of summary judgment to United Fire and Casualty Company (United Fire), on (1) his claim that United Fire breached the implied covenant of good faith and fair dealing by failing to promptly pay him basic and enhanced personal injury protection (PIP) lost-income benefits; and (2) his claim that this failure also constituted a "willful and wanton failure . . . to pay [those] benefits when due" under the Colorado Auto Accident Reparations Act (CAARA), Colo. Rev. Stat. § 10-4-708(1.8) (repealed July 1, 2003). Mr. Lopez also appeals the district court's denial of attorney fees under the CAARA, Colo. Rev. Stat. § 10-4-708(1.7) (repealed July 1, 2003). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Factual and Procedural History

On September 17, 2002, Mr. Lopez fell from the back of a garbage truck while working for Pueblo Sanitation, Inc., seriously injuring himself. He began receiving workers' compensation medical and lost-income benefits. Mr. Lopez alleged that he also contacted American Family Mutual Insurance Co. (American Family), the company that insured his personal automobile, but was told he could not submit a claim for benefits because his own automobile was not involved and workers' compensation benefits were available to him. Neither Mr. Lopez nor Pueblo Sanitation filed an insurance claim with United Fire, the company that insured the garbage truck. Mr. Lopez eventually filed a complaint in Colorado state court on September 15, 2005, which was later removed to federal court.

### A. The Complaint

#### 1. Claim for Declaratory Relief and Reformation

The complaint's first cause of action sought, among other things, a declaration that United Fire failed to properly offer enhanced PIP benefits under § 10-4-710.[1] Before its repeal, the CAARA required that automobile insurance policies include certain minimum or basic PIP benefits to compensate injured persons for medical and rehabilitative expenses and lost wages resulting from automobile accidents. *See* § 10-4-706(1)(a)-(e). The CAARA also required an insurer to offer, in exchange for higher premiums, two types of added or enhanced PIP coverage. The first type was enhanced PIP medical-expense coverage which was essentially basic PIP medical-expense coverage without that coverage's dollar or time limitations. *See* § 10-4-710(2)(a)(I). The second type of enhanced PIP coverage, and the type Mr. Lopez claimed should have been offered to Pueblo Sanitation, consisted of the enhanced PIP medical-expense coverage plus an enhanced PIP lost-income coverage. § 10-4-710(2)(a)(II).

---

[1] All statutory cites are to Colorado Revised Statutes, unless otherwise specified. This court has utilized the 2002 version of the CAARA, Colo. Rev. Stat. §§ 10-4-701 through 726 (repealed July 1, 2003), because the United Fire policy in question was issued in 2002 and Mr. Lopez's accident occurred that year. The CAARA, which prior to repeal governed the sale of automobile insurance in Colorado, was enacted by the Colorado legislature in 1973 for the purpose of avoiding inadequate compensation to victims of automobile accidents. *See Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1165 (10th Cir. 2007).

Under Colorado law, when an insurance company has violated the CAARA by failing to offer enhanced PIP coverage, the legal remedy is to reform the policy to include that coverage.[2] *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1241 (10th Cir. 2003) ("'[W]hen . . . an insurer fails to offer the insured optional coverage that satisfies [the CAARA], additional coverage in conformity with the offer mandated by statute *will* be incorporated into the policy.'") (quoting *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 554 (Colo. App. 1998)) (ellipsis and emphasis in original). Mr. Lopez therefore asked the district court to reform the policy to include the enhanced PIP coverage described in § 10-4-710(2)(a)(II), from the date of issuance.[3]

### 2. Breach of Contract Claim

The complaint's second cause of action argued, as to United Fire, that once the court reformed the insurance contract to include the enhanced PIP benefits from the date of issuance, the court should then find that United Fire breached the contract by failing to properly pay Mr. Lopez those benefits when due.

---

[2]    In diversity cases like this one, the substantive law of the forum state governs the analysis of the underlying claims. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001).

[3]    The only benefits at issue were the lost-income benefits described under § 10-4-710(2)(a)(II).

### 3. CAARA Claim For Willful and Wanton Failure to Pay Benefits When Due

The complaint's third cause of action alleged, as to United Fire, that not only did it fail to pay Mr. Lopez the enhanced benefits when due under § 10-4-708(1), its failure was willful and wanton under § 10-4-708(1.8), and he was therefore entitled to treble damages. Under § 10-4-708(1): "Payment of benefits . . . shall be made on a monthly basis. Benefits for any period are overdue if not paid within thirty days after the insurer receives reasonable proof of the fact and amount of expenses incurred during that period . . . ."[4] Under § 10-4-708(1.8):

> [I]n the event of willful and wanton failure of the insurer to pay such benefits when due, the insurer shall pay to the insured, in addition to any other amounts due to the insured under this subsection . . . , an amount which is three times the amount of unpaid benefits recovered in the proceeding.

In *Dale v. Guaranty National Insurance Co.*, the Colorado Supreme Court held that a "willful and wanton failure to pay benefits when due is established when an

---

[4] We note at this point that an argument may be made that the plain language of § 10-4-708 restricts its application to only the payment of *basic* PIP benefits in § 10-4-706. *See also* Colo. Div. of Ins. Am. Reg. 5-2-8(4)(B) ("Section 10-4-708(1), C.R.S., provides that benefits under the coverages enumerated in § 10-4-706, C.R.S. are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and amount of the expenses incurred."). Nevertheless, because we affirm on other grounds we do not address this question. For the purposes of this order and judgment only, we treat the section as if it also applies to the payment of enhanced PIP benefits under § 10-4-710.

insurer acts without justification and in disregard of [a] plaintiff's rights." 948 P.2d 545, 551 (Colo. 1997) (internal quotation marks omitted).

### 4. Claim for Breach of The Implied Covenant of Good Faith and Fair Dealing

The complaint's fourth cause of action alleged, as to United Fire, that its failure to pay Mr. Lopez the enhanced PIP benefits when they were due constituted a violation of the insurance contract's implied covenant of good faith and fair dealing. Under Colorado law, all insurance contracts contain an implied covenant of good faith and fair dealing. *Id*. at 551 n.6. "For an insured to prevail on a first-party tortious bad faith breach of contract claim against the insurer,[5] the insured must establish that the insurer acted: (1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness." *Id*. at 551.

### B. Answer and Amended Answer

Following the filing of Mr. Lopez's state court complaint, his counsel sent a letter to United Fire on November 11, 2005, referencing the accident and asking for a copy of the insurance policy and declarations. On November 21, 2005, Ron Reihmann, a claims representative for United Fire, responded with a letter

---

[5] Because Mr. Lopez was an insured under the contract, this was a first-party breach claim. *See Farmers Group, Inc. v. Williams*, 805 P.2d 419, 429-30 (Colo. 1991) (Vollack, J., dissenting); *see also Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274-76 (Colo. 1985).

briefly describing the policy coverage and enclosing an application for PIP benefits and medical and wage-loss information authorization forms.

The case was removed to federal district court on December 22, 2005. The certificate of compliance accompanying the notice of removal asserted the complaint had been served on American Family and United Fire on December 8, 2005. United Fire filed its answer in federal court on December 28, 2005, generally denying the majority of the allegations therein and stating it had been unable to complete its internal investigation because Mr. Lopez had not yet submitted an insurance claim. United Fire also filed a counterclaim seeking a declaration that its liability for PIP coverage was subject to a $200,000 cap under the policy. On February 6, 2006, United Fire amended its answer to admit it would not be able to prove that enhanced PIP coverage had been properly offered and the insurance contract would have to be reformed to include that coverage.

### C. Summary Judgment Motions

Although the parties agreed reformation was necessary, they disagreed as to the effective date. In a February 20, 2006, letter to Mr. Lopez's counsel, United Fire voluntarily reformed the contract to include enhanced PIP coverage from October 14, 2005, the date one of its claim representatives, while investigating a different insurance claim, had incidentally become aware of Mr. Lopez's potential

claim.[6] It enclosed a lump-sum check for enhanced PIP benefits for income lost from the proposed reformation date until February 20, 2006, the date of the letter; it then paid enhanced PIP lost-income benefits every two weeks from that point until final settlement was eventually reached. On March 20, 2006, Mr. Lopez moved for partial summary judgment on his declaratory relief claim, seeking a declaration that the policy should be reformed to include enhanced PIP lost-income coverage from date of issuance, and a ruling that the contract had been breached by failure to pay those benefits. United Fire opposed Mr. Lopez's motion and responded with its own summary judgment motion, seeking, among other things, a dismissal of Mr. Lopez's bad faith and willful and wanton failure to pay benefits claims.

In its various motions, United Fire asserted the insurance contract had already been reformed effective October 14, 2005, and argued that date was proper because "it was shortly after that date that [United Fire] became informed that there was even an issue of enhanced PIP." Aplt. App. at 238.

In his various motions, responses, and replies regarding summary judgment, Mr. Lopez argued first that United Fire's selection of an October 2005 reformation date was unreasonable and it was therefore bad faith and willful and wanton conduct for it to not have paid enhanced PIP benefits for income lost prior

_____

[6]   The letter itself stated the effective date was October 15, 2005, but the parties later apparently agreed benefits were paid from October 14, 2005. The exact date is not integral to our ruling.

to that time.  In the alternative, he argued that even if the delay in payment of enhanced benefits was reasonable, the company should at least have timely paid *basic* PIP lost-income benefits–which the parties agreed were included in the policy as written–and that it was bad faith and willful and wanton conduct for it not to have done so.  In response to this second argument, United Fire argued that Mr. Lopez had not submitted a complete insurance claim for basic PIP lost-income benefits until March 29, 2006, and that its April 13, 2006, payment of those basic PIP benefits was therefore timely.

### D.  Summary Judgment Ruling

The district court entered its order on the parties' motions for summary judgment on November 27, 2006.  It held:  "Under the facts and circumstances of this case, United Fire's policy should be reformed to provide enhanced PIP benefits as of the date of its issuance, and not October 14, 2005, the date [on] which United Fire stated it first received notice of a claim."  *Id*. at 365.  The court held, "[a]lthough United Fire's failure to pay enhanced PIP benefits from the date of the accident is a breach of the insurance policy, [Mr.] Lopez has failed to show support for a claim of bad faith," and dismissed Mr. Lopez's bad faith claim.  *Id*. On March 12, 2007, following a joint motion for clarification of the court's order,

the court entered another order summarily dismissing Mr. Lopez's willful and wanton failure to pay benefits claim.[7]

**E. Motion for and Ruling on Attorney Fees**

Mr. Lopez then moved for an award of attorney fees under § 10-4-708(1.7). United Fire argued to the district court, among other things, that fees should be denied because Mr. Lopez had failed to provide a notice required under that section. The court denied attorney fees, but for a different reason.

The court held that § 10-4-708(1.7) "provides for the recovery of attorney fees where the insured successfully brings a proceeding based on the contention that he or she properly submitted claims for payment but the insurer failed to make prompt payment of such direct benefits claimed when they were due." Aplt. App. at 469. The court held that in the present case, however, the basis for United Fire's liability was its inability to establish that it had properly offered enhanced PIP coverage in compliance with § 10-4-710. The court held:

> In this case, [Mr. Lopez's] claims against United Fire were premised on its alleged failure to properly offer enhanced PIP benefits under C.R.S. § 10-4-710 as it existed during the applicable time period, thereby requiring a reformation of United Fire's policy to include such benefits and, consequently, the entitlement to payment of enhanced PIP benefits.

---

[7] The district court dismissed the claims against American Family, finding it had no liability unless Mr. Lopez's expenses exceeded the $200,000 aggregate cap in the United Fire policy. Because Mr. Lopez agreed the cap would not be exceeded, the court found his claims against American Family were not ripe.

*Id.* at 469-70. The court finally stated that "[t]he statutory mechanism for the payment of enhanced PIP benefits was not applicable until the policy was reformed to include enhanced PIP benefits, the very purpose of this litigation. There was no breach of the contract as the policy was written." *Id.* at 470.

## II. Analysis of Summary Judgment

Although, as noted above, Colorado law governs our analysis of the underlying claims, "we are governed by federal law in determining the propriety of the district court's grant of summary judgment. Accordingly, we review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007) (internal quotations omitted). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Further, as a general matter, "[t]he [CAARA] is to be liberally construed to further its remedial and beneficent purposes." *Brennan*, 961 P.2d at 553.

### A. Bad Faith and Willful and Wanton Claim Regarding Basic PIP Benefits

Mr. Lopez first argues that by February 28, 2006, he had provided reasonable proof of the fact and amount of his lost income under § 10-4-708(1), and that basic PIP lost-income benefits were therefore fifteen days overdue when

they were paid on April 13, 2006.  His argument is based on Colorado Division of Insurance Amended Regulation 5-2-8(4)(C)(2) (2004), 3 Colo. Code Regs. § 702-5, which addresses the documents usually sufficient to establish proof of the fact and amount of wage loss when a claimant is pursuing PIP lost-income benefits.[8]  It reads in pertinent part:

> In the usual case, if the claimant is pursuing covered PIP wage loss benefits, the following documents are sufficient to establish proof of the fact and amount of wage loss incurred:
>
> > a.  A properly executed application for benefits from the PIP claimant; and
> >
> > b.  Written verification by a health care provider that the claimant is not able to perform his/her work as a result of the injury; and
> >
> > c.  Written verification of employment and income[.]

---

[8]     In § 10-4-708(1.3), the Colorado legislature directed the commissioner of insurance to promulgate a rule "establish[ing] guidelines for the timely payment of personal injury protection benefits including the penalties for the failure to timely pay such benefits or to otherwise comply with the rule."  The legislature required that "[t]he guidelines for timely payment established by rule shall include at the minimum a list of the items necessary, in addition to the requirements set forth in section 10-4-706, to establish proof of the fact and amount of expenses incurred . . . ."  *Id.*  The commissioner subsequently promulgated Colo. Div. of Ins. Am. Reg. 5-2-8 pursuant to that statute. *See* Colo. Div. of Ins. Am. Reg. 5-2-8(1).  Further, § 3 of Am. Reg. 5-2-8 reads:

> The Colorado Reparations (No-Fault) Act was repealed effective July 1, 2003.  Automobile insurance policies with personal injury protection (PIP) benefits issued or renewed prior to July 1, 2003 will continue to incur PIP claims until such benefits do not apply any longer.  This regulation applies to claims occurring under No-Fault Policies issued prior to July 1, 2003.

Mr. Lopez argues that he provided these documents by February 28, 2006, and the regulation's thirty-day clock started at that time.

In the *usual* case, these documents would show that an injured party was employed at the time of the accident, the amount he or she earned through that employment, and that the party was no longer able to work because of the injury. But another factor comes into consideration when the insured is injured on the job. Under § 10-4-707(5), an injured worker's entitlement to PIP lost-income benefits is reduced to the extent that worker receives lost income benefits under the workers' compensation statute. *Tate v. Indus. Claim Appeals Office*, 815 P.2d 15, 19 (Colo. 1991). Thus, in a case such as this, information regarding the injured party's employment and the severity of the party's injury, standing alone, is *not* sufficient to allow the insurer to determine the amount of benefits.

Nevertheless, even if we assume for the sake of argument that Mr. Lopez had provided the documentation required by the regulation by February 28, 2006, the regulation goes on to provide that

> [i]f an insurer does not pay a claim for benefits under § 10-4-706, C.R.S. within 30 days of receipt of the appropriate documents described in this regulation and as set forth in § 10-4-708, C.R.S., the insurer shall immediately notify the PIP claimant or the claimant's representative . . . of the reason(s) the claim has not been paid. If the claim has not been paid because an investigation is underway, the insurer shall document in the claim file the actions being taken to investigate the claim and the efforts being made to promptly conclude the investigation.

Am. Reg. 5-2-8(4)(D).

-13-

The record reveals that United Fire informed Mr. Lopez that it was not paying basic PIP lost-income benefits because the workers' compensation information was ambiguous and Mr. Lopez had made no specific claim as to the amount of benefits owed. Thus, the issue is whether United Fire's delay in payment for these reasons constituted bad faith or a willful and wanton failure to pay benefits when due.

As noted above, to show that United Fire acted in bad faith, Mr. Lopez had to show that United Fire acted: "(1) unreasonably and (2) with knowledge of or reckless disregard of its unreasonableness." *Dale*, 948 P.2d at 551. To show that United Fire's actions in paying those basic PIP benefits constituted a willful and wanton failure to pay benefits when due, Mr. Lopez had to establish that United Fire "act[ed] without justification and in disregard of [his] rights." *Id*. (quotation omitted).

In *Dale*, the Colorado Supreme Court explained that a willful and wanton failure to pay a claim is not identical to a claim of bad faith, holding that while "[p]roof of willful and wanton conduct as we have defined it will also prove that the insurer knowingly or recklessly acted unreasonably toward its insured . . . a finding that the insurer's conduct was not willful and wanton is not the equivalent of a finding that the insurer did not act in bad faith." *Id*. The court held this was so "because willful and wanton conduct under the No-Fault Act is a subset of insurance bad faith" in that "[w]hile a willful and wanton claim under the

-14-

No-Fault Act is limited to the circumstances concerning the refusal to pay insurance benefits when due, the tort of bad faith breach of an insurance contract encompasses an entire course of conduct and is cumulative." *Id*.

The Colorado Supreme Court thus held that although the "element of reasonableness" in both claims could be considered equivalent, the claims themselves could not be considered equivalent and "a finding on the element of reasonableness in the willful and wanton claim may be preclusive with respect to the same element in the bad faith claim" *only* if the evidence that supports the common-law bad faith claim is identical to the evidence that supports the statutory willful and wanton conduct claim. *Id*. at 552. In the present case, the assertion under both claims is a failure to pay PIP benefits when due and the evidence supporting both claims was identical. We therefore see no difference between the burdens of proof required for each claim and, as explained below, hold that United Fire's actions were reasonable as a matter of law.

In his benefits application, Mr. Lopez claimed that he either was eligible for or had received workers' compensation in the amount of $213.33 per week. To support this claim he provided an indemnity activity log from the workers' compensation insurer, Pinnacol. After receiving notice of Mr. Lopez's claim, United Fire wrote a number of letters attempting to obtain an executed application for PIP benefits, wage and medical authorizations, information regarding the amount of workers' compensation benefits Mr. Lopez had received, and the

amount of PIP benefits he was claiming. United Fire's correspondence consistently reiterated that Mr. Lopez had failed to supply the information necessary for a valid claim. The record shows no response to this correspondence until February 27, 2006, when Mr. Lopez sent United Fire a letter disputing its contention that he had not, at that point, properly submitted a claim. That letter enclosed further documentation regarding his inability to work, but provided no new information regarding workers' compensation payments.

On March 23, 2006, Mr. Reihmann sent a letter to Mr. Lopez's legal counsel in which he reasserted United Fire's position that a proper insurance claim for lost income had *not* been filed by Mr. Lopez because the indemnity activity log appeared to pay Mr. Lopez more than the basic PIP weekly benefit. The letter asserted:

> You have provided no assertion of what the amounts [owed by United Fire] should be during the first year from the date of the accident, and indeed admitted that neither you nor your client had access to the Worker's Compensation file or documentation of the settlement of the Worker's Compensation claim, for United Fire to make a reasoned determination of what may be owed during the first year.

Aplt. App. at 227. United Fire further claimed "the offset that United Fire is entitled to is still unclear, since you have yet to provide us with a copy of any release signed by your client outlining what the Pinnacol payments represented." *Id*. The letter complained that because "[t]he Pinnacol Indemnity Activity document indicates that your client was paid $19,221.76 during the first year" and

-16-

that the first year of PIP payments under either the enhanced or basic PIP formula would be less than that amount, "it does not appear that you have provided sufficient documentation as to any [wage] loss [as to the first year of disability] at this time." *Id.* at 227-28.

On appeal, Mr. Lopez argues that "the fact that United Fire came up with an incorrect number in reading the figures on the Pinnacol Assurance log . . . does not establish that, as a matter of law, it acted reasonably." Aplt. Reply Br. at 5. We believe that under the circumstance of this case no reasonable jury could find that United Fire acted unreasonably in trying to obtain more information regarding the amount of workers' compensation payments. First, United Fire–not Mr. Lopez–was the proactive party in trying to obtain the information necessary to properly handle the claim. Second, the indemnity activity log provided by Mr. Lopez is unclear as to the amount of workers' compensation lost-income payments he received.[9] Third, until March 23, 2006, Mr. Lopez never responded

---

[9]     Although it is not clear how United Fire arrived at its $19,221.76 figure, the log shows a number of different payments being made. Under "Comp Code PP," the log shows $35,527.52 in payments consisting of two "Regular" payments of $426.66, a "Regular" payment of $170.38, a "Lump Sum" payment of $9,503.82, and a "Settlement" of $25,000. Aplt. App. at 230-31. Under "Comp Code TT," the log shows $9,264.62 in payments, consisting of one "Regular" payment of $304.76, and twenty-one "Regular" payments of $426.66. *Id.* The $426.66 regular payments, under both the PP and TT "Comp Code" sections are all for two-week periods, which would be consistent with the application's claim that Mr. Lopez was entitled to $213.33 per week in workers' compensation benefits. *Id.* But there is nothing to explain the difference between the payments under the PP and TT codes, what the lump sum and settlement payments were for,

(continued...)

-17-

to United Fire's inquiries regarding its inability to determine the amount of workers' compensation benefits received or the amount of benefits being claimed. On that date, Mr. Lopez's counsel sent American Family's counsel a letter–and forwarded a copy of this letter to United Fire's counsel–which specifically set forth Mr. Lopez's calculations showing the amount of workers' compensation received and the amounts he claimed were owed by the insurers. Even this letter, since it was addressed to American Family's counsel, made no attempt to address United Fire's prior correspondence. Less than thirty days from its receipt of this letter, United Fire acknowledged that a valid PIP lost-income claim had been received and paid the basic PIP lost-income benefits, despite the fact that it "still ha[d] questions regarding the income amounts already paid to [Mr. Lopez] as reflected in the Pinnacol Indemnity Activity document." Aplt. App. at 359. Under these facts, no reasonable jury could determine that United Fire's fifteen-day delay in paying basic PIP benefits was unreasonable.

**B. Bad Faith and a Willful and Wanton Claim Regarding Enhanced PIP Benefits**

As noted above, United Fire voluntarily reformed the insurance contract to include enhanced PIP lost-income benefits from October 14, 2005, and began paying Mr. Lopez for income lost after that date. It chose October 14 because

[9](...continued)
or what the remaining regular payments covered.

its internal investigation had revealed that on that date one of its claim representatives, while investigating a different insurance claim, had incidentally become aware of Mr. Lopez's potential claim.

United Fire advanced this same argument on summary judgment, asserting the effective reformation date "should at best be to when United Fire was put on notice that such an issue even exist[ed]," Aplt. App. at 113, and that it should only have to pay Mr. Lopez for wages he lost after it became aware its policy violated Colorado law. It argued "reformation should not make an insurer liable for coverage it could not foresee during a time it reasonably did not know of such exposure." *Id*. at 351. Mr. Lopez disagreed, arguing that although United Fire had reformed the insurance policy to include enhanced PIP coverage, its failure to reform the policy to pay those benefits from the date the policy was issued constituted bad faith and a willful and wanton failure to pay benefits when due under § 10-4-708(1.8).

Resort to a judicial forum is not necessarily bad faith–or willful and wanton conduct–because an insurer may legally challenge claims as long as the legal questions presented by its arguments are fairly debatable. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985); *Brennan*, 961 P.2d at 557; *Brandon v. Sterling Colo. Beef Co.*, 827 P.2d 559, 561 (Colo. App. 1991). But Mr. Lopez argued to the district court, and argues to this court on appeal, that a review of the applicable case law shows that United Fire's arguments were not fairly debatable.

-19-

Under Colorado law, when an insurer delays paying insurance benefits to pursue legal arguments, the reasonableness of that party's decision is a question of law. *See Tozer v. Scott Wetzel Servs., Inc.*, 883 P.2d 496, 499 (Colo. App. 1994) ("To submit such a question to the jury would not only require the [lay] jurors to assess the reasonableness of a legal argument, . . . it would require the parties . . . to provide the jurors with legal advice through the guise of expert testimony."). In support of its legal arguments, United Fire cited to the *Clark* line of decisions by the district court and this court.[10]

We need not examine the *Clark* cases in detail, however, because United Fire also relied on *Breaux v. American Family Mutual Insurance Co.*, 387 F. Supp. 2d 1154 (D. Colo. 2005). In *Breaux*, which was decided approximately six months before United Fire's summary judgment motion was filed, the insured purchased an insurance policy from American Family in February 2000. At that time, American Family offered several optional enhanced PIP coverages but did not offer the enhanced PIP lost-income coverage required by § 10-4-710(2)(a)(II). Evidence was presented that American Family amended its general PIP endorsement in January 2001, to offer coverage complying with § 10-4-710(2)(a)(II), but made no change to the insured's policy. The insured

---

[10]    These cases are *Clark v. State Farm Mut. Auto. Ins. Co.* (*Clark I*), 319 F.3d 1234, 1241 (10th Cir. 2003); *Clark v. State Farm Mut. Auto. Ins. Co.* (*Clark II*), 292 F. Supp. 2d 1252, 1268 (D. Colo. 2003); and *Clark v. State Farm Mut. Auto. Ins. Co.* (*Clark III*), 433 F.3d 703, 713 (10th Cir. 2005).

-20-

was injured in an automobile accident in September 2001 and eventually sued to have her policy reformed "to include enhanced PIP benefits [under § 10-4-710(2)(a)(II)] as of the issuance date of the policy." *Breaux*, 387 F. Supp. 2d at 1164. The district court found that reformation was clearly proper but exercised its discretion to set "the appropriate date of reformation [as] the date that [American Family] became aware that it was not in compliance with section 10-4-710(2)(a)(II) *as to Plaintiff's policy*." *Id.* (emphasis added). But the district court did not pick the date of issuance of Ms. Breaux's policy as the reformation date, despite the fact that there is nothing in the opinion showing American Family should not have been aware at the time of issuance of either (1) what coverages it offered, or (2) what Colorado law required. The court instead chose January 1, 2001, as the proper reformation date, which was the date American Family amended its PIP endorsement to add § 10-4-710(2)(a)(II) coverage. Thus, it appears the court chose the date that it was clear American Family had realized its previous PIP coverage options violated Colorado law.

United Fire's argument was essentially that the district court should follow its ruling in *Breaux* and exercise its discretion to reform the insurance policy to the date United Fire received notice that it had failed to offer the proper enhanced PIP lost-income coverage in regard to the Pueblo Sanitation policy.[11] United Fire

---

[11] More specifically, United Fire argued that the policy should be reformed to the date it realized it could not prove it had made the required offer of coverage.

argues this legal position was fairly debatable and we agree. Consequently, we affirm the court's decision that it was not bad faith or a willful and wanton failure to pay benefits when due for United Fire to delay payment of enhanced PIP lost-income benefits by relying on its previous decision in *Breaux*.[12]

Mr. Lopez also complains that United Fire acted in bad faith and committed willful and wanton conduct by delaying payment of enhanced PIP lost-income benefits *after* the district court ordered that such benefits were due. He argues the district court could not properly grant summary judgment because the benefits had not been paid at the time of the court's order and the court therefore had no way of determining if future acts of bad faith or willful and wanton conduct would occur.

We first note that Mr. Lopez's response to United Fire's summary judgment motion did not argue that the court could not rule on the motion until the benefits were paid. *Kelly*, 410 F.3d at 676 (holding we review issues not raised only for

---

[12]    Mr. Lopez also argues for the first time on appeal that the effective date of reformation is *irrelevant* to the amount of enhanced PIP benefits owed to Mr. Lopez. It appears Mr. Lopez is arguing that because United Fire admitted that the reformation date was, at latest, the middle of October 2005, then (1) enhanced PIP coverage–i.e., benefits equaling eighty-five percent of his lost income from the day after the date of the accident–was at least incorporated as of *that* date, and thus (2) once he had presented reasonable proof of his claim at the end of February 2006, those benefits–i.e., lost-income from the day after the accident–should have been paid within thirty days. Mr. Lopez never raised this argument in the district court. We review issues not raised in the district court only for plain error, which is not present here. *Kelly v. Metallics W., Inc.*, 410 F.3d 670, 676 (10th Cir. 2005).

plain error). But even if the argument had been made it would clearly have failed. Mr. Lopez's bad faith and willful and wanton conduct claims necessarily had to concern conduct by United Fire that occurred prior to the court's order. In this case the claims regarding the enhanced PIP lost-income benefits were based on the reasonableness of the legal arguments regarding reformation put forth by United Fire. Those arguments were properly settled by the court in its summary judgment order. Mr. Lopez could not have brought a proper claim arguing that a wrong might be committed at some point in the future. Even if a claim existed for conduct by United Fire that occurred *after* the court's order, it would be a separate claim that is not properly reviewable in this appeal.

## III. Analysis of Denial of Attorney Fees

Mr. Lopez's final claim is that the district court erred in denying his request for attorney fees. Mr. Lopez moved for an award of attorney fees under § 10-4-708(1.7). Subsection (a) of § 10-4-708(1.7) reads:

> At least twenty days prior to the commencement of the proceeding the party claiming the benefits shall set forth the amount claimed and in controversy in a separate document entitled "Notice to insurer of amount claimed", which shall include no more than those amounts the insured claims are denied or not timely paid by the insurer. The notice shall also specify the amount, if any, claimed for attorney fees. The notice shall be served on all parties no later than twenty days prior to the commencement of the arbitration hearing or trial, and shall be served in the manner set forth in rules promulgated by the commissioner of insurance. If such notice is not timely served, there shall be no award of attorney fees to the person claiming benefits, unless the arbitrator or court determines that the failure was the result of excusable neglect, in which case the arbitration or trial

-23-

shall be continued to a date at least twenty days after the notice is
filed.

As noted above, United Fire argued that Mr. Lopez could not collect attorney fees because he had failed to provide the notice referred to above and the district court denied fees because "[t]here was no breach of the contract as the policy was written." Aplt. App. at 470. Mr. Lopez argues the court's denial was inconsistent with its previous holding that a breach of contract did occur. We affirm the denial of attorney fees but for a different reason than that advanced by the district court. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007) (internal quotation omitted) ("We may affirm the district court's decision for any reason supported by the record.").

We review de novo "any statutory constructions or legal conclusions that provide a basis for the award" of attorney fees, "[a]lthough the ultimate decision to award fees rests within the district court's discretion." *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997). We note that "[i]n the absence of a statute, court rule, or private contract to the contrary, attorney fees are not recoverable by a prevailing party in either a contract or a tort action." *Adams v. Farmers Ins. Group*, 983 P.2d 797, 801 (Colo. 1999). Mr. Lopez is seeking attorney fees under § 10-4-108(1.7), which the Colorado Supreme Court has stated is the subsection that "pertains to the availability and amount of attorney fee awards." *Id.* at 803. When interpreting the meaning of that statute, we look to Colorado's

-24-

rules of statutory construction. *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007).

> In construing a statute, our duty is to effectuate the intent and purpose of the General Assembly. We read the statute as a whole, giving sensible effect to all of its parts whenever possible.
>
> If the statutory provisions are clear, we apply their plain and ordinary meaning. If statutory provisions are in conflict, we adopt the interpretation that best harmonizes the various provisions if possible.

*CLPF-Parkridge One, L.P., v. Harwell Invs., Inc.*, 105 P.3d 658, 660 (Colo. 2005) (citations omitted).

> Under § 10-4-708(1.7)(a):
>
> At least twenty days prior to the commencement of *the proceeding* the party claiming the benefits shall set forth the amount claimed and in controversy in a separate document entitled "Notice to insurer of amount claimed", which shall include no more than those amounts the insured claims are denied or not timely paid by the insurer.

§ 10-4-708(1.7)(a) (emphasis added). This notice must also include claimed attorney fees. *Id.* Further, "[i]f such notice is not timely served, there shall be no award of attorney fees to the person claiming benefits, unless the arbitrator or court determines that the failure was the result of excusable neglect, in which case the arbitration or trial shall be continued to a date at least twenty days after the notice is filed." *Id.*

The parties agree no notice was served. Mr. Lopez argues on appeal, as he did to the district court, that service of the notice was not required under the facts of this case. Although the first sentence of subsection 1.7 states that the notice must be served "[a]t least twenty days prior to the commencement of the proceeding," Mr. Lopez points out that the third sentence clarifies what is meant by the phrase "the proceeding." *Id.* That sentence reads: "The notice shall be served on all parties no later than twenty days prior to the commencement of *the arbitration hearing or trial*, and shall be served in the manner set forth in rules promulgated by the commissioner of insurance." *Id.* (emphasis added). Mr. Lopez therefore argues that because the present case was never set for trial or arbitration he was not required to serve the notice.

But the words "the proceeding" are used not just in subsection 1.7(a), they are also used in subsection 1.7(c), which controls how the trial court is to determine "the amount of attorney fees, if any, to be awarded." Under § 10-4-708(1.7)(c)(I):

> The award of attorney fees to the insured *shall be in direct proportion* to the degree by which the insured was successful *in the proceeding*. The determination of the degree of the insured's success *shall be* based upon a comparison of the amount of benefits set forth in the notice of amount of benefits claimed and the amount of benefits recovered *in the proceeding*. The percentage resulting from this comparison *shall be* the degree by which the insured was successful.

Thus, an award of attorney fees is based on the degree to which the party seeking the fees was "successful" in "the proceeding." But, as pointed out by Mr. Lopez, there was no arbitration hearing or trial in this case. Mr. Lopez therefore implicitly reads the references to "the proceeding" in subsection 1.7(c)(I), as references to something that did take place in this case, such as the contract action in general or possibly just the summary judgment proceedings. He therefore argues the monies he eventually received from United Fire were proof of monetary success in "the proceeding." But such conflicting interpretations of the phrase "the proceeding" would not harmonize the various provisions.

Mr. Lopez argued in the district court that he "was successful in recovering 100% of the PIP benefits sought in the litigation." Aplt. App. at 455. But such an interpretation ignores the statutory authorization to award attorney fees. An insured's "success" in "the proceeding" is formulaic. § 10-4-708(1.7)(c)(I). It is measured by a comparison of the claimed benefits set forth in the statutory notice with the amount of benefits recovered in "the proceeding."[13]

At this time, we need not decide precisely what the Colorado legislature intended with its reference to a "proceeding." Here, if the phrase "the proceeding" in subsection 1.7(a) and subsection 1.7(c)(I) is interpreted as a reference to something that actually took place in this case, such as Mr. Lopez's

---

[13]    In *Adams*, the Colorado Supreme Court stated that this "statutory definition of who constitutes a 'successful' party in the substantive proceedings is in need of no additional clarification." 983 P.2d at 802.

overall legal action or the summary judgment proceedings, then Mr. Lopez is barred from collecting fees because he did not serve his notice at least twenty days prior to "the commencement of the proceeding," i.e., the filing of his complaint or his motion for partial summary judgment.[14] If "the proceeding" is interpreted in those subsections as a reference to an "arbitration hearing or trial" then, although no notice was required, Mr. Lopez is still not entitled to attorney fees because, since there was no trial, there were no "benefits recovered in the proceeding" and he was therefore not "successful in the proceeding." Under either interpretation, affirmance is required.

## IV. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge

---

[14] Further, this interpretation would appear to be in direct contrast to the plain language of subsection 1.7(a), which references "the arbitration hearing or trial."

-28-